[No. E033784. Fourth Dist., Div. Two. Feb. 17, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT WARREN OVERMAN, Defendant and Appellant.

COUNSEL

Wilson Adam Schooley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Sharon L. Rhodes and Erika Hiramatsu, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KING, J.—

## INTRODUCTION

Defendant was charged with the attempted murders of Larry Dahl (Larry) and Matthew Bowers (Bowers) in counts 1 and 2, assaulting the same men with a firearm in counts 3 and 4, and discharging a firearm at an occupied building in count 5. (Pen. Code, §§ 664, 187, 245, subd. (a)(2) & 246.)[1] It was further alleged that defendant personally discharged a firearm in counts 1 and 2 (§ 12022.53, subd. (c)), and personally used a firearm in counts 3, 4, and 5 (§§ 12022.5, subd. (a)(1) [counts 3 and 4], 667 & 1192.7, subd. (c)(8) [count 5].) A jury found defendant not guilty of the attempted murder charges (counts 1 and 2), but convicted him of assaulting Larry and Bowers with a firearm and of discharging a firearm at an occupied building (counts 3, 4, and 5). The jury also found the personal use allegations true. Defendant was sentenced to 12 years in prison.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Defendant's sentence consisted of the low term of two years on count 3, the principal count, plus a consecutive 10-year term for the personal use enhancement on count 3. Concurrent 2-year and 10-year terms, respectively, were imposed on count 4 and on the personal use enhancement on count 4. A five-year term was imposed but stayed on count 5.

Defendant appeals. He contends that the trial court erroneously instructed the jury on the "intent" element of discharging a firearm at an occupied building (§ 246) in count 5, and erroneously refused to instruct the jury on the lesser included offense, as charged, of the grossly negligent discharge of a firearm (§ 246.3) in count 5.

We conclude that the jury was properly instructed on the "intent" element or, more accurately, the "proscribed act" element, of section 246 in count 5. We further conclude, however, that the trial court erroneously failed to instruct the jury on the lesser included offense of violating section 246.3 in count 5, and that the error was prejudicial under *Watson*.[3] It is reasonably probable defendant would have realized a more favorable result in count 5 had the jury been instructed on section 246.3. Accordingly, we reverse defendant's conviction in count 5. In all other respects, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

### A. *Prosecution*

In 1999, defendant was a foreman at The Truss Company in Banning. At some point, defendant was terminated, but Bowers, the company production manager, rehired defendant in October or November 1999. Shortly thereafter, Bowers fired defendant due to an attendance problem. By early December 1999, the owners of The Truss Company had again rehired defendant to work at the company's Cabazon location.

On December 8, 1999, at approximately 1:40 p.m., Banning Police Officer Michael Nava responded to a call regarding a shooting that had just taken place at The Truss Company's Banning location. There, Nava separately interviewed Bowers and two other company employees, Larry and his brother Michael Dahl (Michael).

### 1. *Larry's Testimony and Prior Inconsistent Statements*

Shortly after the shooting, Larry told Officer Nava that he was at the work tables by the south wall of the property when defendant called to him from the other side of the wall. Larry walked to the wall, stood on a stack of trusses, looked down, and spoke to defendant from over the wall. Defendant was about 10 feet away, standing next to his Cadillac. Larry told Officer Nava

---

[3] *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*).

and Bowers that defendant asked him to get him some "speed" or methamphetamine, but he told defendant no. Larry also told Officer Nava and Bowers that defendant became angry, pulled some bullets from his front pants pocket, and threw them at Larry. One of the bullets hit Larry in the ear.

Larry told Officer Nava that he and defendant started arguing, and that Michael came over and joined the argument. During the argument, defendant reached into the backseat of his car and pulled out a black SKS rifle. Larry and Michael ran toward the office area, shouting that defendant had a rifle and to run. Larry told Officer Nava that defendant then got in his car, drove northbound on 4th Street, stopped in the middle of the street, pointed the rifle at Larry and Bowers, and fired about six times from the open passenger window from a distance of approximately 20 yards. Larry and Bowers dove to the ground. Larry told Bowers that he did not see defendant fire the rifle.

At trial, Larry testified that defendant never missed a day of work and was never late. He said defendant was "drunk" when he and defendant spoke at the back wall on December 8. He did not recall what he and defendant talked about because he "was probably buzzed." Nor did he recall defendant asking him to buy drugs, becoming angry, or throwing anything at him. He denied that Michael joined the conversation or that he saw defendant with a gun. He said he and defendant spoke for "a couple minutes" before he told defendant he had to go.

He further testified that, as he began walking back toward the work tables, Bowers yelled at him to get back to work. Then he walked toward the office where Bowers was standing. As he was talking to Bowers, he heard shots. Bowers grabbed him, and the two of them hit the ground. He did not recall telling Officer Nava or anyone else that he saw defendant stop in the middle of the street, pull a rifle from his car, and start shooting. Nor did he recall telling anyone that he ran toward the office and told everyone to run. He testified that he did not see defendant with a gun at all. At the time of trial, he was incarcerated for felony spousal abuse.

### 2. *Michael's Testimony and Prior Inconsistent Statements*

Michael testified that he did not see defendant on the day of the shooting and did not see Larry talking to defendant. He said he heard shots and saw people ducking, so he ducked under a table. He did not recall speaking to Officer Nava or telling anyone else that defendant pulled out a gun while he,

Larry, and defendant argued by the wall. Michael was convicted in 1998 of first degree burglary. Officer Nava testified that Michael's trial testimony was inconsistent with his statements at the scene of the shooting.

### 3. *Bowers's Testimony*

Bowers testified that on the morning of the shooting he noticed Larry and Michael go to the back wall to talk to someone. After about five minutes, he walked toward the back wall and told Larry and Michael to get back to work. He recognized defendant as the person with whom Larry and Michael were speaking. Suddenly, Larry and Michael ducked behind some trusses and began moving quickly back toward the work tables, shouting that defendant had a gun. Michael jumped under the tables, and Larry came quickly toward Bowers. Bowers said that "[e]verybody else in the yard was jumping under the tables and hiding behind the rollers."

Bowers further testified that, as Larry was walking toward him, defendant pulled alongside the fence in his Cadillac. Defendant stopped the car not more than 80 feet from Larry and Bowers. Bowers saw the barrel of a gun protruding about eight inches from defendant's car window, pointed toward himself and Larry. Bowers did not see defendant's hand on the gun. Larry jumped down behind a stack of trusses, and Bowers ran to the office to call the police. Bowers reached the end of the walkway about 10 seconds later and heard five to six shots. He continued running until he reached the office and asked an employee to call the police. He did not see defendant fire his gun, nor did he see where defendant's gun was pointed at the time the shots were fired.

### 4. *No Evidence of Bullet Holes or Impacts*

After Officer Nava completed his interviews, he and Bowers walked through the property looking for bullet holes and points of impact on buildings, vehicles, trusses, and other objects. None were found. Several bullets were found on the ground near where Larry said defendant threw bullets at him. Two bullet casings were also found on the roadway outside The Truss Company property.

### 5. *Other Witnesses' Testimony*

Ben Durch, another employee of The Truss Company, heard several shots fired. After he heard the shots, he saw defendant drive by in his white Cadillac and pull "what could have been a rifle" from the passenger side window. He only saw it for two seconds. He told a defense investigator that

the rifle may have been leaning on the seat as it was pointed out the window. He did not see any shots fired.

Alvin Endicott was with Ben Durch when he heard several loud noises. He also saw the white Cadillac drive by. He saw the "weapon or rifle . . . stuck partially out the window and heard [defendant shouting] obscenities, and that was it." He saw defendant holding the rifle in one hand at arm's length, but did not see him fire it. He also told a defense investigator he was not sure whether the rifle was pointing out of the window or leaning on the seat out of the window.

### 6. *Defendant's Arrest*

Shortly after the shooting, Officer Richard Youngblood began looking for defendant's white Cadillac. He spotted the Cadillac on Highway 243 as it approached from the opposite direction. He made a U-turn and followed the Cadillac with his overhead lights on. Defendant accelerated and Officer Youngblood turned on his siren. Defendant continued to accelerate to a high rate of speed, then skidded to an abrupt stop as he approached Lyons Park. Officer Youngblood pulled out his shotgun and ordered defendant to the ground. Defendant was wearing a green T-shirt, camouflage pants, and a large camouflage fanny pack around his waist.

Inside the Cadillac, Officer Youngblood saw a black SKS rifle lying just to the right of the driver's seat with the barrel pointed downward. The rifle was a Chinese military SKS semiautomatic weapon, capable of storing 40 rounds of ammunition in its magazine. Officer Joe Feola found 11 live rounds in the magazine and one in the firing chamber of the rifle. Officer Feola recovered a total of 305 live rounds of ammunition, including a 10-round "stripper clip," from the dashboard, seat, and floorboard of defendant's car, his pants pockets, and his fanny pack. Officer Feola also recovered two expended shell casings from the front passenger seat of defendant's car, and more expended shell casings from the rear floorboard.

### B. *Defense*

Defendant did not testify. The defense theory was that defendant did not shoot at anyone or any buildings but discharged his gun into the air. The defense emphasized that no one saw defendant fire his rifle or point at anyone or anything, and, despite a police search, there was no evidence that any bullets struck any buildings or anything else at The Truss Company.

The defense argued that, if defendant had been shooting at anyone or anything, he would have hit his targets. Officer Feola testified that bullets fired from an SKS rifle stay in a straight-line trajectory for over 300 yards, so "you would expect to see an impact in a direct line . . . up to about 300 yards [from where a bullet is fired]." Michael testified that defendant was a "marksman" and "a real good" shot.

## DISCUSSION

A. *The Trial Court Properly Instructed the Jury on the Elements of Shooting at an Occupied Building (§ 246), the Charged Offense in Count 5*

Defendant contends that the trial court erroneously instructed the jury on the "intent" element of shooting at an occupied building (§ 246), the charged offense in count 5. He argues that the trial court should have instructed the jury that the "intent" element of section 246 is satisfied only if a defendant shoots directly "at" an occupied building. We disagree.

The jury was given CALJIC No. 9.03. In pertinent part, it stated: "Defendant is accused in Count 5 of having committed the crime of shooting at an occupied building, a violation of section 246 . . . . [¶] Every person who willfully and maliciously discharges a firearm at an occupied building is guilty of the crime of shooting at an occupied building . . . . [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person discharged a firearm at an occupied building; and [¶] 2. The discharge of the firearm was willful and malicious."

During deliberations, the jury submitted the following question to the trial court: "We would like to know if the term 'shooting at an occupied building' [implies] that the building has to be the actual target, or shooting in the proximity of an occupied building. . . ." After discussing the matter with counsel, the trial court gave the jury the following additional instruction: "[A]n act done with a reckless disregard of probable consequences is an act done with intent to cause such result within the meaning of the words used in the instruction related to Count [5]. If you conclude that the defendant was aware of the probability that some shots would hit the building and that he was consciously indifferent to that result, that is . . . a sufficient intent to satisfy the statutory requirement."

■ The trial court's additional instruction was proper. As we explain, section 246 is not limited to shooting *directly* at an inhabited or occupied

target. Rather, it proscribes shooting *either* directly at *or* in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it. The trial court's additional instruction conveyed this requirement.

■ Section 246 provides: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle . . . is guilty of a felony . . . ." Section 246 is a general intent crime. (*People v. Watie* (2002) 100 Cal.App.4th 866, 879 [124 Cal.Rptr.2d 258].) "As for all general intent crimes, the question is whether the defendant intended to do the proscribed act." (*People v. Jischke* (1996) 51 Cal.App.4th 552, 556 [59 Cal.Rptr.2d 269].) "In other words, it is sufficient for a conviction if the defendant intentionally did that which the law declares to be a crime." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437–1438 [35 Cal.Rptr.2d 155].) In the words of the statute, section 246 is violated when a defendant intentionally discharges a firearm "at . . . inhabited dwelling house, occupied building . . . ."

■ The act of shooting "at" an inhabited or occupied target was defined in *People v. Chavira* (1970) 3 Cal.App.3d 988 [83 Cal.Rptr. 851] (*Chavira*). There, the defendant and his associates fired several shots at persons "congregated in front of, and on the driveway leading to" an inhabited dwelling. (*Id.* at p. 993.) The defendant argued that the evidence was insufficient to support his section 246 conviction, because he did not fire "at" the dwelling but "at" persons outside it. (*Id.* at p. 992.) The court rejected this argument, noting that "[d]efendant and his associates engaged in a fusillade of shots directed primarily at persons standing close to a dwelling." (*Id.* at p. 993, fn. omitted.) On this basis, the court reasoned, "[t]he jury was entitled to conclude that they were aware of the probability that some shots would hit the building and that they were consciously indifferent to that result. That is a sufficient 'intent' to satisfy the statutory requirement [of section 246]." (*Ibid.*)

■ As *Chavira* demonstrates, section 246 is not limited to the act of shooting directly "at" an inhabited or occupied target. Rather, the act of shooting "at" a proscribed target is also committed when the defendant shoots in such close proximity to the target that he shows a conscious indifference to the probable consequence that one or more bullets will strike the target or persons in or around it.[4] The defendant's conscious indifference to the

---

[4] " 'At' is '[a] preposition of extremely various use, to which lexicographers have given many definitions and shades of meaning. It is a word of great relativity and elasticity of meaning and is somewhat indefinite, shaping itself easily to varying contexts and circumstances, and taking its color from the circumstances and situation under which it is necessary to apply it to surrounding objects. Aside from its context, it is not a word of precise and

probability that a shooting will achieve a particular result is inferred from the nature and circumstances of his act.

■ It is instructive to distinguish between the acts that section 246 proscribes, e.g., shooting at an inhabited dwelling house or occupied building, and the statute's general intent requirement. As noted, section 246 is a general intent crime. (*People v. Watie, supra,* 100 Cal.App.4th at p. 879.) "A crime is characterized as a 'general intent' crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a 'specific intent' crime when the required mental state entails an intent to cause the resulting harm. [Citation.] 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intent is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some future act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " (*People v. Davis* (1995) 10 Cal.4th 463, 518–519, fn. 15 [41 Cal.Rptr.2d 826, 896 P.2d 119], citing *People v. Hood* (1969) 1 Cal.3d 444, 456–457 [82 Cal.Rptr. 618, 462 P.2d 370].)

■ Section 246 does not require a specific intent " 'to do a further act or achieve a future consequence' " beyond the proscribed act of shooting "at" an occupied building or other proscribed target. (*People v. Atkins* (2001) 25 Cal.4th 76, 85 [104 Cal.Rptr.2d 738, 18 P.3d 660].) In other words, the statute does not require a specific intent to achieve a particular result (e.g., strike an inhabited or occupied target, kill or injure). (*People v. Cruz* (1995) 38 Cal.App.4th 427, 431–433 [45 Cal.Rptr.2d 148] (*Cruz*).) Instead, the statute only requires a shooting under facts or circumstances that indicate a conscious disregard for the probability that one of these results will occur.[5]

■ Defendant notes that, in *Chavira* and *Cruz,* "there was undisputed evidence of impact on the target." Thus, he argues, section 246 requires a defendant to shoot directly at and strike an occupied building. We disagree. As we have explained, section 246 is *not* limited to shooting directly at a proscribed target. Nor does the statute require a specific intent to strike the target.

---

accurate meaning, or of clean, clear-cut definition, and it has been said that the connection furnishes the best definition.' [Citation.]" (*People v. Stepney* (1981) 120 Cal.App.3d 1016, 1019, fn. 3 [175 Cal.Rptr. 102] (*Stepney*) [discussing meaning of "at" within context of § 246].)

[5] As used in section 246, the terms "maliciously" and "willfully" are expressions of the statute's general intent requirement. (*People v. Williams* (1980) 102 Cal.App.3d 1018, 1029 [162 Cal.Rptr. 748]; § 7, cls. (1) & (4).) They do not suggest that the statute requires a specific intent.

Defendant's reliance on *Stepney* is also misplaced. There, the defendant forcibly entered a residence and shot a television set. The court held that the defendant did not violate section 246, because he discharged a firearm "within a dwelling," not "at" an inhabited dwelling. (*Stepney, supra,* 120 Cal.App.3d at pp. 1018–1021.) The court emphasized that its decision was limited to the discharge of a firearm "within a dwelling," and that "a different question would be presented if a person fired a weapon from one apartment into an adjoining apartment . . . [or] in a hallway of a multiple family dwelling." (*Id.* at p. 1021.) *Stepney* does not stand for the proposition that section 246 requires discharging a firearm directly "at" an inhabited or occupied target.

B. *The Trial Court Erroneously Refused to Instruct the Jury on the Lesser Included Offense of Violating Section 246.3 in Count 5, and the Error Was Not Harmless*

Defense counsel requested a "lesser offense" instruction on the grossly negligent discharge of a firearm in count 5, a violation of section 246.3. The People objected to the instruction on two grounds: (1) the grossly negligent discharge of a firearm (§ 246.3) is not a lesser included offense of shooting at an occupied building (§ 246); and (2) the limitations period had run on section 246.3. The trial court refused to give the instruction on the ground that the limitations period had run, without eliciting defendant's express waiver of the limitations period defense. The trial court did not determine whether section 246.3 was a lesser included offense of section 246.

Defendant contends this was error. We agree. As we first explain, the expiration of the limitations period on a violation of section 246.3 was an improper ground for refusing the instruction, because, here, defendant was willing to waive the limitations period defense. As we further explain, section 246.3 is a necessarily lesser included offense of section 246, and substantial evidence showed that the lesser included offense, but not the greater, was committed. Accordingly, an instruction on section 246.3 should have been given. Lastly, the error was not harmless. Defendant's section 246 conviction must therefore be reversed.

1. *The* Cowan *Rule*

In refusing defendant's request to instruct on the "lesser" offense of section 246.3, the trial court relied on *People v. Ognibene* (1993) 12 Cal.App.4th 1286 [16 Cal.Rptr.2d 96] and *People v. Brice* (1988) 206 Cal.App.3d 111 [253 Cal.Rptr. 370] for the proposition that an instruction on a "lesser offense" cannot be given where the limitations period has run on it. But as the

People now concede, both *Ognibene* and *Brice* were disapproved in *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 375 [58 Cal.Rptr.2d 458, 926 P.2d 438] *(Cowan)*.

In *Cowan*, the court held that an instruction on a "lesser offense" must be given when the defendant requests the instruction, and *expressly waives* the limitations period on the lesser offense. *(Cowan, supra,* 14 Cal.4th at pp. 376–377.) The court held that "whenever a defendant seeks to plead guilty to, or a court considers whether to instruct the jury on, a lesser offense, [the court and prosecutor] should determine whether there may be a problem with the statute of limitations regarding that offense. If so, the court should elicit a waiver of the statute as a condition of the . . . giving [of] the instruction. This should be an easy process. The record need merely reflect in some fashion that the defendant is aware that the offense is, or might be, time-barred, and the defendant has waived the statute of limitations." *(Ibid.)* The court also explained that expiration of the limitations period does not deprive the court of fundamental subject matter jurisdiction. *(Id.* at p. 374.)

Since *Cowan* was decided, our state Supreme Court has held that instructions on lesser *related* offenses must not be given over the People's objection. *(People v. Birks* (1998) 19 Cal.4th 108, 136 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) The high court has also affirmed that instructions on lesser included offenses must be given sua sponte, when there is substantial evidence that the lesser offense, but not the greater, was committed. *(People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) But following *Birks* and *Breverman,* the rule of *Cowan* remains applicable when a court is considering whether to instruct on a time-barred *lesser included offense.* (See *People v. Williams* (1999) 21 Cal.4th 335, 346, fn. 4 [87 Cal.Rptr.2d 412, 981 P.2d 42].) In other words, the trial court must attempt to elicit a defendant's express waiver of a limitations period defense, when the defendant requests the instruction and it appears that the lesser included offense is, or may be, time-barred.

Here, the trial court did not attempt to elicit defendant's express waiver of his limitations period defense, if any, to a violation of section 246.3. Instead, it refused to give the instruction solely on the ground a violation of section 246.3 was time-barred. This was error.[6] Nevertheless, the instruction would have been properly refused if (1) discharge of a firearm in a grossly negligent

---

[6] Notably, our state Supreme Court has yet to decide "the legal significance of the absence of an express waiver following conviction of a time-barred lesser offense." *(People v. Williams, supra,* 21 Cal.4th at p. 346, fn. 5.) Here, however, we need not decide whether a violation of section 246.3 was time-barred, or, if it was, the legal significance of the absence of defendant's express waiver of his limitations period defense, if any. Our reversal of defendant's conviction in count 5 obviates these questions for purposes of this appeal.

manner (§ 246.3) is not a lesser included offense of the shooting at an occupied building (§ 246), or (2) there was no substantial evidence that the lesser included offense, but not the greater, was committed. We now turn to these questions.

## 2. *Section 246.3 is a Lesser Included Offense of Section 246*

There are two tests to determine whether a lesser offense is necessarily included in the charged offense: the "elements" test and the "accusatory pleading" test. "The elements test is satisfied when ' "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]' [Citations.] Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. [Citations.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d 195, 965 P.2d 713].) The accusatory pleading test is satisfied " ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' [Citations.]" (*Id.* at pp. 288–289.)

No published California decision has determined whether section 246.3 is a lesser included offense of section 246 under the elements test.[7] We conclude that it is, because section 246 cannot be violated without violating section 246.3.

Section 246 provides: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar . . . or inhabited camper . . . is guilty of a felony . . . . [¶] . . . '[I]nhabited' means currently being used for dwelling purposes, whether occupied or not." In contrast, "occupied" means that the building, motor vehicle, or aircraft must be occupied at the time of the shooting.

Section 246.3 provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison." Section 246.3 is a "wobbler" offense,

---

[7] In *People v. Sengpadychith* (2001) 26 Cal.4th 316, 322 [109 Cal.Rptr.2d 851, 27 P.3d 739], the court noted that the defendant was acquitted of shooting at an inhabited dwelling house (§ 246), and convicted of "the lesser included offense" of grossly negligent discharge of a firearm (§ 246.3). However, the issue whether section 246.3 was a lesser included offense of section 246 was not before the court.

which the trial judge has discretion to sentence as a misdemeanor or a felony. (§ 17, subd. (b); *People v. Leslie* (1996) 47 Cal.App.4th 198, 201 [54 Cal.Rptr.2d 545].)

As we have noted, section 246 is a general intent crime. (*People v. Watie, supra,* 100 Cal.App.4th at p. 879.) And as we have explained, section 246 is violated when a defendant intentionally discharges a firearm either directly at a proscribed target (e.g., an inhabited dwelling house or occupied building) or in close proximity to the target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it. No specific intent to strike the target, kill or injure persons, or achieve any other result beyond shooting at or in the general vicinity or range of the target is required.

Section 246.3 is also a general intent crime because, like section 246, its mental state consists of an intent to do the act that causes the harm. (See *People v. Davis, supra,* 10 Cal.4th at pp. 518–519, fn. 15.) The elements of section 246.3 are: "(1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person." (*People v. Alonzo* (1993) 13 Cal.App.4th 535, 538 [16 Cal.Rptr.2d 656].) The requirement that the discharge of a firearm be intentional is separate from the requirement that the discharge occur in a grossly negligent manner which could result in injury or death. (*In re Jerry R., supra,* 29 Cal.App.4th at pp. 1438–1439.) Section 246.3 does not require a specific intent " 'to do a further act or achieve a future consequence' " beyond the act of discharging a firearm in a grossly negligent manner. (*People v. Atkins, supra,* 25 Cal.4th at p. 85.)

Section 246.3 was enacted in 1988, nearly 40 years after section 246, to address the "growing number of urban California residents engaged in the dangerous practice of discharging firearms into the air during festive occasions." (*People v. Leslie, supra,* 47 Cal.App.4th at p. 201.) Gross negligence, as used in section 246.3, "requires a showing that the defendant's act was ' "such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences." ' " (*People v. Alonzo, supra,* 13 Cal.App.4th at pp. 539–540.) Section 246.3 thus "presupposes that there are people in harm's way. . . . [I]t must appear that the defendant's act 'actually had the potential for culminating in personal injury or death.' " (*People v. Clem* (2000) 78 Cal.App.4th 346, 351–352 [92 Cal.Rptr.2d 727].)

The foregoing illustrates that a violation of section 246 necessarily includes a violation of section 246.3. When a defendant shoots at an inhabited

dwelling house, occupied building, or other target listed in section 246, the defendant discharges a firearm in a manner that has the potential for culminating in personal injury or death. Shooting at an inhabited dwelling house, for example, whether occupied or not, necessarily poses a significant likelihood or "high probability" that personal injury or death will result, because people " 'are generally *in* or *around* the premises.' " (*People v. Hansen* (1994) 9 Cal.4th 300, 310 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) The same significant risk of personal injury or death is present when a defendant shoots at any other target listed in section 246.

 Unlike section 246, section 246.3 does not require that an inhabited dwelling, occupied building, or any other specific target be in the defendant's firing range. But like section 246, section 246.3 involves discharge of a firearm under circumstances presenting a significant risk that personal injury or death will result. Section 246 proscribes discharging a firearm *at specific targets*, the act of which presumably presents a significant risk that personal injury or death will result. Section 246.3 proscribes discharging a firearm *in any grossly negligent manner* which presents a significant risk that personal injury or death will result.

 The only difference between sections 246 and 246.3 is that section 246 requires that a specific target (e.g., an inhabited dwelling or an occupied building) be in the defendant's firing range. Section 246 does not include this requirement. Both crimes, however, involve the intentional discharge of a firearm in a grossly negligent manner which presents a significant risk that personal injury or death will result.

### 3. *Substantial Evidence Shows That Section 246.3, but Not Necessarily Section 246, Was Violated*

In the present case, substantial evidence showed that, moments before defendant fired his rifle, he pointed it at Larry and Bowers, both of whom were standing in close proximity to an occupied building. This is based on Larry's statements to Officer Nava, shortly after the shooting, that he saw defendant point his rifle at himself and Bowers and fire it about six times. On this basis, the jury could have reasonably inferred that defendant fired his rifle either directly at or in close proximity to an occupied building under circumstances showing a conscious disregard for the probability that one or more bullets would hit the building or persons in or around it. Thus, substantial evidence supported the section 246 instruction.

But there was also evidence that defendant violated section 246.3 and not section 246. At trial, Larry testified that he did not see where defendant was pointing his rifle *at the time* he fired it, and no other witnesses saw where

defendant was pointing his rifle at the time he fired it. Additionally, no bullet holes or points of impact were found on any buildings or objects on The Truss Company property. There was also testimony that defendant was an excellent marksman, and that bullets from an SKS rifle travel in a straight-line trajectory for over 300 yards. This suggested that defendant would have hit anything he was aiming at. Accordingly, the jury had reason to infer that defendant fired his rifle *away* from the general vicinity or range of the occupied office building.

Still, the evidence showed that defendant fired his rifle under circumstances which had the potential for resulting in personal injury or death, because he fired his rifle in the general vicinity of several persons. On this basis, the jury could have reasonably inferred that defendant fired his rifle under circumstances showing a grossly negligent disregard for human life, a violation of section 246.3, but not directly at or in close proximity to an occupied building, a violation of section 246. It follows that the trial court erred in failing to instruct the jury on the lesser included offense of violating section 246.3 in count 5.

### 4. *The Instructional Error Was Not Harmless*

"[W]hen a trial court violates state law by failing to properly instruct the jury on a lesser included offense, this test applies: '[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offense and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836 [299 P.2d 243]]. A conviction of the charged offense may be reversed in consequence of this form of error only if, "after an examination of the entire cause, including the evidence" (Cal. Const., art. VI, § 13), it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred. [Citation.]' " (*People v. Lasko* (2000) 23 Cal.4th 101, 111 [96 Cal.Rptr.2d 441, 999 P.2d 666].)

Here, the evidence that defendant shot either directly at or in the general vicinity or range of an occupied building was not unequivocal. Although defendant certainly fired his rifle, he may not have fired it in the general vicinity or range of the occupied office building. The jury apparently questioned whether defendant fired his rifle at an occupied building, because it asked the trial court whether " 'shooting at an occupied building' [implies] that the building has to be the actual target, or shooting in the proximity of an occupied building. . . ." In view of the entire cause, including the evidence, it is reasonably probable that the jury would have convicted defendant of the lesser included offense of violating section 246.3 in count 5, had it been instructed on section 246.3.

## DISPOSITION

Defendant's section 246 conviction in count 5 is reversed. In all other respects, the judgment is affirmed.

Hollenhorst, Acting P. J., and Ward, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 15, 2005.