Filed 10/30/14  In re Ernest M. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ERNEST M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ERNEST M.,<br><br>  Defendant and Appellant. | F068457<br><br>(Super. Ct. No. JJD067143)<br><br>**OPINION** |

THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

R. Randall Riccardo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*       Before Levy, Acting P.J., Kane, J. and Detjen, J.

The court found that appellant, Ernest M., was a person described in Welfare and Institutions Code section 602 after it sustained allegations charging him with shooting at an inhabited dwelling (count 1/Pen. Code, § 246)[1] and found true a gang enhancement (§ 186.22, subd. (b)(1)(B)) in that count.

On November 15, 2013, the court set appellant's maximum term of confinement at 11 years and committed him to the Tulare County Youth Facility for 365 days. The court also placed appellant on probation on certain terms and conditions.

On appeal, appellant contends: 1) the evidence is insufficient to sustain his adjudication for shooting into an inhabited dwelling; the evidence is insufficient to sustain the gang enhancement; and 3) three of his probation conditions are unconstitutionally vague. We will find merit to this last contention and modify the probation conditions at issue. In all other respects, we will affirm.

## FACTS

On September 4, 2013, the district attorney filed a petition charging appellant with shooting at an inhabited dwelling (count 1), a gang enhancement in that count, and possession of live ammunition by a minor (§ 29650).

Appellant's adjudication hearing was held on October 23, 2013. At this hearing, the prosecution evidence established that on August 31, 2013, at approximately 2:00 a.m., Guadalupe Arteaga was sleeping in her home on Teddy Street in Farmersville when she was awakened by the sound of gunshots. She soon discovered that a bullet had struck the front door and another bullet had struck the front bedroom of the house. Two spent .380 caliber shell casings were recovered at the scene of the shooting.

Farmersville Police Officer Josh Weatherbie responded to the area where the shooting occurred and drove around looking for suspects. As he drove westbound on

---

[1]     Subsequent statutory references are to the Penal Code.

Marilyn Street two blocks south of the shooting site he saw a thin male, whom he later identified as appellant, running south on Ventura Street, away from Arteaga's residence.[2] As Officer Weatherbie approached the intersection of Ventura Street and Marilyn Street, appellant slowed down and walked across the street in front of Weatherbie's patrol car. Officer Weatherbie rolled down his window, shone his spotlight on appellant, and asked him where he lived or if he lived at the corner house that he was walking towards. Appellant did not answer and continued walking away. Officer Weatherbie then noticed appellant was carrying something heavy in his pocket that dragged his shorts down a bit. As appellant walked up the driveway of the corner house, he reached into his pocket, grabbed a silver gun, and tossed it under a vehicle parked on the driveway. Officer Weatherbie got out of his car and chased appellant, but appellant evaded him by squeezing through a gate into the backyard of the corner house. Officer Weatherbie retrieved a .380 caliber handgun from under the vehicle that was parked on the driveway.

Within 30 minutes of the shooting, Farmersville Police Officer Mark Cruz detained appellant, who appeared to be out of breath, at an apartment complex located behind the corner house whose backyard appellant had used to evade Officer Weatherbie.

Exeter Police Officer Ashley Guinn transported appellant to the juvenile detention center. En route appellant stated several times that he claimed VFC and that he was VFC for life. At one point, he became upset and started crying and he stated several times that he was "in debt" and that "they" were going to kill him.

Farmersville Police Corporal Rafael Vasquez testified as an expert on gangs. According to Corporal Vasquez, VFC stands for "Varrio Farmas Catorce," which is a gang in Farmersville that is a clique of the Norteño/Nuestra Familia Gang. VFC claims the entire city of Farmersville and it has approximately 50 members and 30 associates.

---

[2] Officer Weatherbie did not see any other cars on the road except for another police car, and the only other person the officer testified to seeing out on the street at that time was someone whom he referred to as Tommy.

VFC gang members identify with the color red, the letter "N," and the number "14"; their rivals are all Sureños. VFC has a structure that includes a shot-caller who issues orders and disciplines gang members who do not follow the rules. The primary activities of VFC are any criminal activities ranging from vandalism to homicide.

Corporal Vasquez also testified that appellant was a gang member. He based his opinion on several factors, including a tattoo appellant had on his arm with the names of at least two deceased former gang members and his admissions to Officer Guinn.

Corporal Vasquez further testified that when a gang member says, "I'm in debt[,] [t]hey are going to kill me" it could mean that he owes money to the gang for "dope," money he borrowed, or for some other reason. Vasquez also testified that Arteaga's house was known to be a "Sureño house." He based this testimony on his past contacts with the house and other officer's reports. Vasquez further testified that in his opinion the following circumstances showed a "[w]illingness to support the gang and to commit a crime to benefit and support a gang": a police officer contacting a VFC gang member sometime after 2:00 a.m.; the gang member was disposing of a firearm when contacted by the officer; a very recent shooting where a house was shot multiple times; and no one else was found in the area. According to Vasquez, a Norteño gang member shooting at a Sureño house benefits the gang member by enhancing his reputation, status and notoriety and it benefits his gang because it instills fear in rival gangs.

The defense did not present any evidence. After hearing argument from counsel, the court took the matter under submission. On October 30, 2013, the court found the shooting into an inhabited dwelling count and the gang enhancement in that count true and count 2 (possession of live ammunition) not true.

## DISCUSSION

### The Sufficiency of the Evidence to Sustain Appellant's Adjudication for Shooting at an Inhabited Dwelling

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in

the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence .... [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' [Citations.]" (*People v. Brown* (2014) 59 Cal.4th 86, 105-106.)

In order to prove the crime of shooting at an inhabited dwelling in violation of section 246, each of the following elements must be proven: (1) A person discharged a firearm at an occupied building; and (2) the discharge of the firearm was willful and malicious. (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1355.)

The only issue here is whether appellant was the person who discharged the firearm at Arteaga's house. The evidence established that shortly after 2:00 a.m., within minutes of Arteaga's house being shot at, appellant was seen running from the house about two blocks away. Shortly after the shooting, Officer Weatherbie did not see any other cars in the area and he saw only one person other than appellant. When Officer Weatherbie asked appellant if he lived at the corner house appellant was walking towards, appellant did not answer and kept walking. He also discarded a firearm that was the same caliber as the casings found at the scene of the shooting. Further, Corporal Vasquez testified that appellant was a Norteño gang member, that Norteño and Sureño gang members are rivals, and that the house that was shot at was a known Sureño house. He also testified that by shooting into a Sureño house, a Norteño gang member would gain respect and enhance his reputation and notoriety within the gang and that the gang would benefit because it would instill fear in rival gang members. Further, appellant

5.

admitted to Officer Guinn that he was in debt and that "they" were going to kill him. The court could reasonably find from these circumstances that appellant was the gunman, and that he was fleeing from the scene of the shooting when he was detained.

Appellant contends the evidence is insufficient to sustain his adjudication for shooting into an inhabited dwelling because: 1) there was no direct evidence he was the actual shooter; 2) there was no evidence that established the caliber of the bullets that hit the house; (3) the shell casings found at the scene could have been deposited there on a prior occasion; and (4) a witness reported that he heard a car driving in the area after the shots were fired.

None of these circumstances detract from the reasonableness of the court's conclusion that appellant was the person who shot at Arteaga's house. As noted above, a conviction or adjudication may be based primarily on circumstantial evidence. Further, the defense did not present any evidence that the bullets that hit Arteaga's house were not .380 caliber or that another shooting had recently occurred in that area. Additionally, appellant improperly relies on the testimony of a witness that he heard a car in the area after the shooting to argue that someone else committed the shooting because the court sustained a hearsay objection to that statement. Accordingly, we reject appellant's challenges to the sufficiency of the evidence to sustain his adjudication for shooting at an inhabited dwelling.

### The Sufficiency of the Evidence to Sustain the Court's True Finding on the Gang Enhancement

"The same standard of review [that applies to substantive offenses] also applies to section 186.22 gang enhancements." (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 610.)

"Section 186.22 adds various sentencing enhancements for gang-related felonies. For purposes of the enhancements, subdivision (b)(1) of that section requires that the felony be committed 'for the benefit of, at the direction of, or in association with any

criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' This portion of section 186.22 requires proof of only two elements: (1) that the defendant committed a felony for the benefit of, at the direction of, *or* in association with any criminal street gang; and (2) that he did so with the intent to promote, further, or assist in criminal conduct by gang members. [Citation.]" (*People v. Mejia* (2012) 211 Cal.App.4th 586, 613.)

Here, Corporal Vasquez testified as an expert that based on previous reports and police contacts with Arteaga's house, the house was a known Sureño house. He also testified that shooting at a Sureño affiliated house benefited appellant by gaining him respect and enhancing his status in the gang and that it benefited VFC by instilling fear in rival gangs. Further, appellant's spontaneous statements of loyalty to his gang soon after having shot at Arteaga's house provide additional support for the conclusion that he shot at the house for the benefit of his gang.

Moreover, Vasquez testified that appellant's statement that he was "in debt" and that "they" would kill him could mean that appellant was indebted to the gang for any of a variety of reasons. The court could reasonably infer from this testimony that appellant was indebted to VFC for some unspecified reason and that, irrespective of whether Arteaga's house was a Sureño house, he shot at it for the benefit of VFC as a means of satisfying that debt. The court could also reasonably infer from these circumstances, particularly appellant's statements of loyalty to his gang and statements that he was in debt, that appellant shot at Arteaga's residence with the specific intent to benefit his gang.

Appellant cites the following colloquy to contend that Corporal Vasquez's testimony that Arteaga's house was a known Sureño house was unreliable:

"[DEFENSE COUNSEL]:     And you said something about having previous contacts at this Teddy Street address. Were those with the current owners or were those with the previous owners?

"[VASQUEZ]:     It's got to be the current owners because if it was the previous owners, the Sureño affiliation continued on

7.

|  |  |
|---|---|
| | to the next owners. |
| "[DEFENSE COUNSEL]: | I'm sorry. The what? |
| "[VASQUEZ]: | I would guess – what I'm trying to say, if there was previous owners, they were associated to Sureños, the Sureño gang. And if they are new owners now, they are still associated with Sureño gangs. So I don't know if it is the same owners. See what I'm saying? |
| "[DEFENSE COUNSEL]: | You don't know if these were the people you met on the previous contact? |
| "[VASQUEZ]: | Correct. |
| "[DEFENSE COUNSEL]: | So you have no information as to whether the Arteaga family I think that was their last name. |
| "[THE COURT]: | Arteaga. |
| "[DEFENSE COUNSEL]: | What is it? |
| "[THE COURT]: | Arteaga. |
| "[DEFENSE COUNSEL]: | Is a part of any gang? |
| "[VASQUEZ]: | I'd have to review the report from that residence, which I didn't." |

Appellant cites Corporal Vasquez's uncertainty whether Arteaga's house had previously changed owners and Vasquez's admitted failure to read a report on the house to contend this shows Vasquez was not sure whether Arteaga's house was a Sureño house when the shooting occurred. Thus, according to appellant, since the prosecutor failed to prove that the house was a Sureño house when the shooting occurred, it was insufficient to prove that the shooting was committed for the benefit of a gang or to sustain the gang enhancement. We disagree.

As noted previously, Corporal Vasquez testified on direct examination that based on previous reports and contacts that he and other police officers had with Arteaga's house, he knew the house to be a Sureño house. This testimony did not mean that he was

8.

personally involved in all the reports and contacts that he based his opinion on because as an expert he was entitled to rely on the contacts and reports by other officers or citizens in arriving at his opinion. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618-619 [an expert witness may rely on reliable hearsay materials in formulating an opinion].) Further, even if the house had previously changed owners, it could have continued to be a Sureño affiliated house if the new owners were affiliated with a Sureño gang. Thus, his inability to recall whether Arteaga's house had previously changed owners did not undermine his opinion that the house was a "known Sureño house."

Moreover, when Vasquez testified he had to review his report because he had not done so, Vasquez was responding to defense counsel's question whether he had any information indicating that the Arteaga family was "a part of any gang." The context of this answer indicates Vasquez needed to review the report in order to determine whether any or all members of the Arteaga family were members of a gang or associates in order to answer the question posed. It did not, however, mean that Vasquez had to update his research or that he was unsure whether the house was currently a gang house as appellant contends. In any event, as noted earlier, Vasquez's opinion that appellant shot at the house for the benefit of the VFC gang is also supported by appellant's repeated statements shortly after the shooting affirming his loyalty to VFC and expressing his belief that "they" were going to kill him because he was in "debt." Accordingly, we also reject appellant's claim that the evidence is insufficient to sustain the court's true finding on the gang enhancement.

### *The Probation Conditions at Issue*

In imposing certain gang conditions as conditions of probation, the court stated:

> "You are to comply with these terms regarding gangs: You are not to be a member of or associate with anybody you know or reasonably should know is either a member or involved in the activities of a criminal street gang. [¶] You are not to wear items or emblems reasonably known to you to be associated with or symbolic of gang membership. [¶] You are

9.

not to acquire any new tattoos or piercings known to you to be gang related."

Appellant contends that these gang conditions are vague and overbroad and that to cure this constitutional deficiency, the conditions should specify that the word "gang" refers to a criminal street gang as defined in section 186.22, subdivision (f). Respondent concedes and we agree.

"'A probation condition "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated," if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad. [Citation.]' [Citation.] The vagueness issue may be raised for the first time on appeal. [Citation.]" (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 245 (*Vincent G.*).) In *Vincent G.*, the court solved the vagueness problem in the conditions there at issue by incorporating the definition of gangs set forth in section 186.22. (*Vincent G.*, *supra*, at pp. 247-248.) In accord with *Vincent G.*, we will modify the gang conditions here to incorporate the definition of gangs contained in section 186.22.

## DISPOSITION

Appellant's gang conditions are modified so that for purposes of these conditions, the word "gang" means a criminal street gang as defined by Penal Code section 186.22, subdivision (f). As modified, the judgment is affirmed.