Filed 7/12/23  P. v. Jacinth CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GERALD STANLEY JACINTH,<br><br>        Defendant and Appellant. | A166018<br><br>(Sonoma County<br>Super. Ct. No. SCR-743208-1) |

John Doe was standing inside the garage attached to his home when Gerald Stanley Jacinth, his brother-in-law, shot him twice at point blank range.  The first bullet grazed Doe, went through the garage ceiling, and into the attic; the second entered his back, traveled through his body, and hit the rear wall of the garage.  A jury convicted Jacinth of attempted murder and shooting at an inhabited dwelling.  (Pen. Code, §§ 187, subd. (a), 189, 664; 246, subsequent undesignated statutory references are to this code.)  The jury also found true he personally used a firearm and inflicted great bodily injury on Doe.  (§§ 12022.53, subd. (d), 12022.7, subd. (a).)  After denying Jacinth's motion to strike the enhancements, the trial court sentenced him to an aggregate term of 23 years plus seven years to life in prison.

On appeal, Jacinth contends the evidence was insufficient to support his conviction for shooting at an inhabited dwelling because he fired at Doe, not the dwelling.  He also argues the trial court was required to dismiss his

1

firearm enhancement under section 1385 because it resulted in a sentence of over 20 years. Alternatively, he argues the court erred in concluding he was a danger to public safety when it denied the motion to strike the enhancement. We affirm.

## BACKGROUND

On the morning of December 26, 2020, Jacinth — 75 years old — sat in his parked car across the street from Doe's house. Doe — 77 years old — opened his garage door 42 minutes later. Doe's wife was inside the house. Jacinth exited his car wearing a Santa hat, beard, and a Halloween mask covering his face; Doe did not recognize him. One of Jacinth's arms was in a duffel bag that Doe believed was a sling. Jacinth tried to give Doe a package wrapped in Christmas wrapping paper, but Doe refused to take it. Doe attempted to walk away from the garage, and Jacinth blocked his path.

While Jacinth stood outside the garage, he raised the duffel bag and aimed it at Doe; for his part, Doe stood just inside the garage. Growing suspicious, he swung around and used his left arm to try to block the bag. Jacinth fired a gun hidden in the duffel bag, grazing Doe's collarbone. The bullet traveled at an upward angle, went through the garage ceiling and into the attic. Doe yelled and ran further into the garage. From outside the garage, Jacinth shot Doe again. The second shot entered Doe's lower back, went through his body, through a container of foot powder, and hit the rear wall of the garage. Jacinth pursued Doe into the garage; his gun jammed, and he left without firing again. He drove away but was quickly arrested by police. A search of his car revealed a duffel bag with two bullet holes.

The prosecutor charged Jacinth with attempted murder (§§ 187, subd. (a), 664, subd. (a)) and discharging a firearm at an inhabited dwelling (§ 246). Relevant here, the complaint alleged enhancements for his

2

attempted murder offense — that Jacinth personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), personally used a firearm (§ 12022.53, subd. (b)), and personally inflicted great bodily injury on Doe (§ 12022.7, subd. (a)). For the offense of shooting at an inhabited dwelling, the complaint alleged Jacinth personally inflicted great bodily harm on Doe (§ 12022.7, subd. (a)), and that he had personally and intentionally discharged a firearm, which caused great bodily injury to Doe (§ 12022.53, subd. (d)). In addition, it alleged aggravating factors for sentencing purposes: the crime involved great violence or other acts indicating a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; and the manner in which the crime was carried out indicates planning, sophistication, or professionalism.

A jury found Jacinth guilty of both offenses. It also found each of the firearm enhancements and great bodily injury enhancements true. It further found the above-identified aggravating factors true. At sentencing, the trial court denied Jacinth's motion to strike his enhancements under section 1385. It acknowledged there were multiple enhancements that could result in a sentence of over 20 years, a mitigating factor weighing greatly in favor of dismissing the enhancement. (§ 1385, subd. (c)(2)(C).) But after referencing the significant evidence at trial Jacinth was holding a grudge against Doe, the ruse of giving Doe a present, Doe's vulnerability, and the use of a firearm, the court determined Jacinth posed an extreme danger to the public as well as Doe. Dismissing the enhancement, the court concluded, was not in the interest of justice or public safety. The court sentenced Jacinth to an aggregate term of 23 years plus seven years to life — seven years to life for the attempted murder; 20 years for the firearm enhancement; and three years for the great bodily injury enhancement. (The court stayed the

sentence for count two — an aggregate term of 10 years plus 25 years to life — pursuant to section 654.)

## DISCUSSION

Jacinth challenges his conviction for shooting at an inhabited dwelling and makes multiple arguments regarding the denial of his motion to strike his firearm enhancement. We address each argument in turn.

Jacinth initially contends the evidence was insufficient to support his conviction for shooting at an inhabited dwelling because he shot at Doe, not his garage. After reviewing the record in the light most favorable to the judgment to determine whether the jury could have found the essential elements of the crime, we conclude there was substantial evidence — "evidence that is reasonable, credible, and of solid value" — supporting the verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Relevant here, maliciously and willfully discharging a firearm at an inhabited dwelling house or occupied building is a felony. (§ 246.) An attached garage can be considered an occupied building. (*People v. Adams* (1982) 137 Cal.App.3d 346, 355.) Shooting at an inhabited dwelling house or occupied building is a general intent crime. (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1356 (*Overman*).) The statute does not require a specific intent to strike the dwelling or building — "section 246 is not limited to shooting *directly* at an inhabited or occupied target." (*Id.* at pp. 1355–1356.) "[I]t proscribes shooting *either* directly at *or* in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it." (*Id.* at p. 1356.)

That Jacinth targeted Doe, and not his house, is thus of no moment when assessing culpability under section 246. (*Overman*, *supra*, 126

4

Cal.App.4th at p. 1356; *People v. Cruz* (1995) 38 Cal.App.4th 427, 432 [rejecting argument defendant is not liable under § 246 because he targeted the victim who was inside the building, not the building itself].) *People v. Stepney* (1981) 120 Cal.App.3d 1016 does not alter this conclusion. There the defendant entered a home and, while inside, shot at a television. (*Id.* at p. 1018.) The court concluded the defendant did not violate section 246 because he intentionally and directly fired a gun "within the dwelling" rather than " '*at* an inhabited dwelling house.' " (*Stepney*, at pp. 1018, 1021, fn. 5.) But the court expressly limited this decision to circumstances when a firearm is discharged within a dwelling. (*Id.* at p. 1021.) Jacinth was not within the garage when he shot at Doe — he was standing on the driveway and fired two shots at Doe, who was standing inside the garage. Given Jacinth's location while firing the shots, liability for a section 246 offense is proper.

Substantial evidence supports the jury's conclusion that Jacinth was aware his gunshots could strike the garage, Doe's house, or persons in and around either, and he was "consciously indifferent to that result." (*People v. Chavira* (1970) 3 Cal.App.3d 988, 993.) Though Jacinth did not engage in a "fusillade of shots directed primarily at persons standing close to a dwelling," he fired at Doe who was in close proximity to the occupied building. (*Id.* at p. 993; *Overman, supra,* 126 Cal.App.4th at p. 1356.) Targeting Doe, at close range, in his garage did not reduce the probability the bullets would strike an occupied building or persons in and around it. (*Overman,* at p. 1356.) To the contrary, it increased it. The record demonstrates Jacinth's gun discharged upward after Doe tried to defend himself. The first bullet grazed Doe's collarbone and traveled through his garage ceiling and into his attic. When Doe fled further into the garage, Jacinth shot him again. That bullet hit the back of Doe's garage after traveling through his body. A jury could

reasonably conclude targeting a victim at close range made it foreseeable a bullet could ultimately hit a nearby wall.

Jacinth next contends section 1385 obligated the trial court to dismiss his firearm discharge enhancement because it resulted in a sentence of over 20 years. *People v. Mendoza* (2023) 88 Cal.App.5th 287 considered and rejected this precise argument, and we agree with that court's reasoning.

Section 1385, subdivision (c)(1) states, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Subdivision (c)(2) provides, "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove" the presence of a statutorily enumerated mitigating circumstance. Subdivision (c)(2) continues: "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*." (Italics added.) " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

The mitigating circumstance in section 1385, subdivision (c)(2)(C) exists when "[t]he application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." Jacinth contends the phrase "the enhancement shall be dismissed" obligates the trial court to dismiss the firearm enhancement even if dismissal would endanger public safety. We disagree. Although the word "shall" frequently indicates a mandate, the phrase must be read in context of the entire statute, not in isolation. (*People v. Mendoza, supra*, 88 Cal.App.5th at pp. 295–296.) The statute's language and structure make clear that dismissal is only mandatory if, after giving great weight to the mitigating factor and exercising

6

its discretion, the court determines dismissal would be in the interests of justice and would not endanger public safety. (*Id.* at p. 296.) The "statute does not appear to give the court discretion, let alone a mandatory duty, to dismiss an enhancement if doing so would endanger public safety." (*Id.* at p. 296, fn. 4.)

In sum, the trial court was not required to strike Jacinth's 20-year firearm enhancement given its finding that dismissal of the enhancement would endanger public safety.

Finally, Jacinth contends the trial court improperly concluded that dismissing the firearm enhancement would endanger public safety. The court, he argues, failed to assess the danger he would pose at the time he completed his sentence absent the enhancement rather than the danger he posed at the time of sentencing. Moreover, Jacinth argues the evidence established he only posed a danger to Doe, not the public at large. We disagree. There was no abuse of discretion in the court's ruling. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.)

The trial court based its conclusion that Jacinth was dangerous to public safety on evidence concerning his lengthy grudge against Doe. The evidence showed Jacinth had a dispute with Doe twenty years prior about housing investments and living arrangements for Jacinth's elderly father. Years before the actual shooting, Doe and his wife obtained a restraining order against Jacinth after he threatened to shoot and kill Doe. And, in a recorded jail call, Jacinth gloated to his son about shooting Doe. These circumstances, the court observed, illustrate the persistence of Jacinth's grudge even after the shooting. Instead of limiting its assessment of the threat Jacinth posed at the time of sentencing, the court noted Jacinth's grudge would continue through his sentence and "presumably beyond."

7

Given the length and intensity of the grudge against Doe, it was not irrational to conclude Jacinth's danger to Doe and the public would continue beyond his release from prison if the enhancement were dismissed. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 298.)

The record further supported the court's conclusion that dismissing the enhancement would result in a likelihood of "physical injury or other serious danger" to the public, not just Doe. (§ 1385, subd. (c)(2).) Though directed at Doe, Jacinth discharged his firearm into an occupied building and risked serious injury to others. (Cf. *People v. Anderson* (1990) 221 Cal.App.3d 331, 338.) Use of a costume, the ruse of delivering a Christmas package to get close to the victim, and surveilling Doe's residence before the shooting all demonstrated Jacinth posed an extreme danger. (Cf. Cal. Rules of Court, rule 4.421(a)(8) [planning, sophistication, or professionalism in committing the crime is an aggravating factor].) That Jacinth would be in his 80s when released from prison if the firearm enhancement were dismissed does not diminish the danger posed to the public. Jacinth was 75 years old when he shot Doe. The court observed shooting a firearm "does not require a high degree of physical fitness." Based on the totality of the evidence, the court's finding that dismissing the enhancement would endanger public safety was not "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

## DISPOSITION

The judgment is affirmed.

8

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Fujisaki, J.

A166018