Filed 3/14/24  P. v. Lebeau CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B321829 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. NA041629 |
| PATRIC DEMON LEBEAU, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard M. Goul, Judge. Affirmed.

Law Office of Winston K. McKesson and Winston Kevin McKesson for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 2001, a jury found defendant and appellant Patric Demon Lebeau guilty of second degree murder and two counts of attempted murder and, in connection with each of these counts, found true the allegation that Lebeau had personally discharged a firearm, which proximately caused great bodily injury and death. The jury was instructed on both direct aiding and abetting and felony murder but was not instructed on the natural and probable consequences doctrine. In 2019, Lebeau filed a petition for resentencing under Penal Code section 1172.6.[1] Lebeau's petition was filed before the change in the law that provided for resentencing for attempted murder convictions made under the natural and probable consequences doctrine, but his reply brief was filed after the change in the law and requested resentencing of his attempted murder convictions. The trial court denied the petition, concluding that, because the jury found true the allegation that Lebeau personally discharged a firearm, which proximately caused the death of the victim, he was the actual killer and thus was not entitled to relief. It held that the same reasoning applied to the attempted murder convictions. Although the court's reasoning was flawed, its conclusion that Lebeau failed to make a prima facie case of entitlement to relief under section 1172.6 was correct. We affirm.

---

[1] All undesignated statutory references are to the Penal Code. Lebeau filed his petition for resentencing under former section 1170.95, which the Legislature later renumbered to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We hereafter cite to section 1172.6 for ease of reference.

# FACTUAL BACKGROUND

Murder victim Kenneth Wilson belonged to the Rolling 20's Crips. In the evening of March 6, 1999, Wilson drove through a Long Beach neighborhood with passengers Leon Simon and Skylar Morgan.

Wilson thought he saw someone he knew and turned his car around to talk to the person in front of an apartment on Locust Street. There was a group of three men present, including Jomo Bland, who was a member of the rival Insane Crips gang. After a short exchange between Wilson, Bland, and Bland's cohort, Bland and another person in his cohort discharged firearms into the car, killing Wilson and wounding Simon and Morgan. Lebeau disputes that he was the second shooter.

# PROCEDURAL BACKGROUND

In an information dated November 28, 2000, Lebeau was charged with one count of murder (§ 187, subd. (a)), two counts of attempted murder (§ 664/187, subd. (a)), and one count of shooting at an occupied motor vehicle (§ 246). With respect to counts 1 through 3, it was further alleged that Lebeau personally and intentionally discharged a firearm, which proximately caused great bodily injury and death within the meaning of section 12022.53, subdivision (d), personally discharged a firearm within the meaning of section 12022.53, subdivision (c), and personally used a firearm within the meaning of section 12022.5, subdivision (a)(1) and 12022.53, subdivision (b).

In relevant part, the jury was instructed on direct aiding abetting (CALJIC No. 3.01), murder (CALJIC No. 8.10), deliberate and premeditated murder (CALJIC No. 8.20), unpremeditated murder of the second degree (CALJIC No. 8.30),

second degree felony murder (CALJIC No. 8.32), attempted murder (CALJIC No. 8.66), willful, deliberate and premeditated attempted murder (CALJIC No. 8.67), shooting at an occupied motor vehicle (CALJIC No. 9.03), personal use of a firearm (CALJIC No. 17.19), and intentional and personal discharge of a firearm proximately causing great bodily injury or death (CALJIC No. 17.19.5).

The jury found Lebeau guilty of second degree murder, two counts of attempted murder, and shooting at an inhabited vehicle. It also found true the allegation that Lebeau personally and intentionally discharged a firearm, which proximately caused great bodily injury and death within the meaning of section 12022.53, subdivision (d), with respect to counts 1 through 3. A trial court sentenced Lebeau to 40 years to life for count 1; life with possibility of parole plus 25 years for count 2, to run consecutive to count 1; life with possibility of parole plus 25 years for count 3, to run consecutive to count 2; and seven years for count 4, which the court stayed pending the completion of counts 1, 2, and 3. This Division affirmed the judgment on direct appeal. (*People v. Lebeau* (Mar. 19, 2004, B155479) [nonpub. opn.].)

In July 2019, Lebeau filed a form petition for resentencing. He checked boxes stating: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189. The petition did not mention attempted murder.

4

The court ordered the Los Angeles District Attorney to file a response to the petition and appointed counsel for Lebeau.

In January 2020, the Los Angeles County District Attorney's Office (District Attorney) filed an opposition arguing that Lebeau was liable either as a direct aider and abettor or as a major participant. The District Attorney argued that the prosecution did not proceed under a theory of felony murder and that the jury convicted Lebeau of second degree murder and found the gun use allegation to be true. As support, the prosecution cited the unpublished appellate opinion, which it attached to its petition.

In his reply, filed in May 2022,[2] Lebeau explained that "[t]his vacating and resentencing Reply is related to a legislative change in the law concerning defendants serving murder/attempted murder/manslaughter under any theory in which malice is imputed solely based on participation in the crime [in] accordance with Senate Bill 775, Penal Code §188, and § 1170.95." Lebeau reiterated that he was incarcerated for both murder and attempted murder and that, under section 1170.95, "a defendant convicted of murder and/or attempted murder may petition the Court to be resentenced . . . ." He argued that there was no evidence that he was the actual shooter of Wilson or that he "attempted to shoot" Morgan or Simon, nor was there evidence that he was an aider and abettor. Lebeau further argued that he

---

[2] Between the filing of the District Attorney's opposition in January 2020 and the filing of Lebeau's reply brief over two years later, Lebeau filed three motions requesting that the District Attorney's office turn over its file on Lebeau, a petition for habeas corpus, and a petition for resentencing under section 1385.

was not a major participant in the crime and did not act with reckless indifference.

At the hearing on Lebeau's petition, which took place on May 18, 2022, the court heard arguments from the District Attorney, Lebeau's counsel, and Lebeau himself. The court explained that a petition for resentencing can be denied at the prima facie stage when the record reflects that the defendant was convicted under a theory of murder that is still viable, citing *People v. Cortes* (2022) 75 Cal.App.5th 198. It further stated: "When the court looks at the record, the transcript of the sentencing, as well as the official minutes of the sentencing, the jury found the defendant guilty of second degree murder. More importantly, they found him guilty — further found that the allegation that the said defendant, Patric Demon Lebeau, personally and intentionally discharged a firearm, a handgun, which proximately caused death to Kenneth Wilson within the meaning of Penal Code 12022.53(d) to be true. [¶] It was a finding of the jury beyond a reasonable doubt that the defendant was the killer. This is not a theory pursued or relied upon by the jury in convicting the defendant which is no longer viable. [¶] And the same goes for the jury's rulings on the attempted murder allegation and the gun allegation attached to those." The court therefore concluded that Lebeau had failed to meet his prima facie burden.

In July 2022, Lebeau filed a notice of appeal.

After the conclusion of briefing on appeal, the Supreme Court issued its ruling in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), in which it held that a special circumstance finding that a petitioner had acted with the intent to kill was insufficient to establish that he had been convicted under a now-valid theory of

6

murder as a matter of law. We asked the parties to submit supplemental briefing addressing the impact, if any, of *Curiel* on this appeal, and they have done so.[3]

## DISCUSSION

Lebeau contends that there was insufficient evidence to support his attempted murder convictions and that we cannot address whether he has established a prima facie case for resentencing as to those convictions because the court did not consider them in ruling on his petition. With respect to the second degree murder conviction, Lebeau argues that he was not the actual shooter and could not have been convicted as an aider and abettor because the jury was not instructed on that theory and the theory of aiding and abetting does not apply to second degree murder. He further contends that there was insufficient

---

[3] In November 2023, Lebeau filed a request to augment the record and a supplemental brief, which we deem a request for leave to file a supplemental brief. (Cal. Rules of Court, rule 8.200(a)(4).) Both the request to augment and request for leave to file a supplemental brief concern proceedings relating to the petition for resentencing that took place in the trial court *after* this appeal was filed. " '[W]here there is no statutory exception, " '[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur' [citation] and deprives the trial court of jurisdiction to make any order affecting the judgment [citation]." [Citation.]' [Citation.]" (*People v. Cress* (2023) 87 Cal.App.5th 421, 424.) Lebeau cites no statutory exception to this general rule, which he does not acknowledge. Thus, when he filed his appeal, the court was deprived of jurisdiction to issue orders concerning the petition for resentencing, such as granting a motion for reconsideration, and we decline to consider the statements of the court after it was divested of jurisdiction. We therefore deny his requests for leave to file a supplemental brief and to augment the record.

7

evidence to support his murder conviction and that he could not be convicted today because he was not a major participant and did not act with reckless indifference to human life. Lebeau also asserts that the jury's findings should have no preclusive effect.

The Attorney General concedes that the court's reasoning was "incomplete," but argues that the jury instructions and findings do not permit the conclusion that Lebeau was convicted of attempted murder under a now impermissible theory. The Attorney General also contends that the jury's finding that Lebeau acted with intent to kill with respect to attempted murder means that he was not convicted of second degree murder under a felony murder theory.

## 1. Legal Standards

As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022, section 1172.6, subdivision (a) provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts[.]"

An offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that

8

person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3); see also *id*., subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (*Id*., subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (*Id*., subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid*.) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid*.)

In determining whether a petitioner has made a prima facie showing of entitlement to relief, the trial court's inquiry will necessarily be informed by the record of conviction, which will facilitate the court in distinguishing "petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) This includes the jury

9

instructions, which are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,'" which must wait to occur until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, disapproved on another ground in *Lewis*.) The court is prohibited from engaging in "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972.) Rather, the court must "'"take[ ] [the] petitioner's factual allegations as true"'" and make a "'"preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."'" (*Id.* at p. 971.) Summary denial of the petition is appropriate where the record of conviction establishes the petitioner is ineligible for resentencing as a matter of law. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 945; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).)

"The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding . . . . The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' [Citation.]" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.) A denial at this stage is appropriate if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at p. 960.)

## 2. Analysis

### 2.1. Lebeau's contention that the jury's findings are not entitled to any preclusive effect is unsupported.

As a preliminary matter, we address Lebeau's contention that, following *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*), "[n]o finding in Appellant's case should have preclusive effect or be above relitigation of the issue." *Strong* does not support this broad proposition. In *Strong*, the court held that felony murder special-circumstance findings under section 190.2, subdivision (d), issued by a jury before the decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, which clarified the terms "major participant" and "reckless indifference to human life" in the special-circumstance statute, do not preclude a defendant from making out a prima facie case for resentencing of a felony-murder conviction, even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*. (*Strong*, at pp. 706–710.) The Supreme Court specifically rejected the contention of amicus curiae the Office of the State Public Defender that the Legislature intended that adverse special circumstances findings would have no effect on resentencing. It explained: "[T]he structure of [section 1172.6] — which permits trial courts to consult the record of conviction to

11

determine whether the defendant has made out a prima facie case of eligibility [citation], and which notably does not open resentencing to every previously convicted murder defendant — strongly suggests the Legislature contemplated that many, and perhaps most, such findings would be given effect on resentencing. Had the Legislature intended to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing, we expect it would have said so more plainly." (*Id.* at p. 715.)

In *Curiel*, *supra*, 15 Cal.5th 433, the Supreme Court reiterated that, in *Strong*, it had "rejected the argument that section 1172.6 categorically prohibited the consideration of factual findings made by a jury in the defendant's underlying trial." The Supreme Court further noted that "the resentencing statute itself does not prohibit the consideration of jury findings — *and in fact affirmatively contemplates it*[.]" (*Id.* at p. 451, italics added.)

There was no felony murder special-circumstance finding in this case. However, Lebeau asserts that "there have been several changes in the law regarding murder, attempted murder, [and] intent . . . which were not present during [his] original trial," but simply lists "PC 745 and AB333" without discussion. We are unwilling to hold that section 1172.6 permits the wholesale relitigation of all jury findings relating to murder, attempted murder, and intent in the absence of any analysis supporting that contention. " ' " 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " [Citation.] "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to

12

authority allows this court to treat the contention as waived." '
[Citation.]" (*Coastline JX Holdings LLC v. Bennett* (2022) 80
Cal.App.5th 985, 1011.)

Thus, "[t]he mere filing of a section [1172.6] petition does
not afford the petitioner a new opportunity to raise claims of trial
error or attack the sufficiency of the evidence supporting the
jury's findings. To the contrary, '[n]othing in the language of
section [1172.6] suggests it was intended to provide redress for
allegedly erroneous prior factfinding . . . . The purpose of section
[1172.6] is to give defendants the benefit of amended sections 188
and 189 with respect to issues not previously determined, not to
provide a do-over on factual disputes that have already been
resolved.' [Citation.]" (*People v. Farfan*, *supra*, 71 Cal.App.5th at
p. 947; accord, *People v. Burns* (2023) 95 Cal.App.5th 862, 865
["Section 1172.6 does not create a right to a second appeal, and
[the petitioner] cannot use it to resurrect a claim that should
have been raised in his . . . direct appeal."]; *People v. DeHuff*
(2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a
petitioner to establish eligibility on the basis of alleged trial
error"].) Lebeau raises no persuasive challenge to the preclusive
effect of the jury's findings.[4] Accordingly, we reject his contention

---

[4] The Supreme Court has stated that the "contours [of issue preclusion]
are informative in this context" — i.e., in section 1172.6 proceedings.
(*Curiel*, *supra*, 15 Cal.5th at p. 451.) Lebeau does not assert that any
element of issue preclusion is not satisfied. Rather, in his
supplemental letter brief on *Curiel*, Lebeau contends that the jury's
finding that he acted with intent to kill for attempted murder "must
not be given preclusive effect and or impact, if preclusion found, for
equitable considerations in this case." As we understand it, these
"equitable considerations" are that the court purportedly erred in
failing to instruct the jury on a lesser included offense by failing to

that we may not rely upon the jury's findings in determining whether he has made a prima facie case of entitlement to relief under section 1172.6.

> ### 2.2. Although the court's reasoning was flawed, it correctly concluded that Lebeau did not establish a prima facie case of entitlement to relief.

The court concluded that the true findings with respect to the gun allegations under section 12022.53, subdivision (d), constituted "a finding of the jury beyond a reasonable doubt that the defendant was the killer" and that the same reasoning applied to attempted murder. The court erred in its reasoning.

In *People v. Bland* (2002) 28 Cal.4th 313, 336 (*Bland*), the California Supreme Court explained: "Section 12022.53(d) requires that the defendant 'intentionally and *personally* discharged a firearm' . . . , but only that he 'proximately caused' the great bodily injury or death. . . . Proximately causing and personally inflicting harm are two different things." Thus, a true finding under section 12022.53, subdivision (d), was possible whether it was the defendant, the defendant's accomplice, or an event set in motion by the discharge of the firearm that directly caused the victim's death. (*Bland*, at pp. 335–336.) Further, in *People v. Offley* (2020) 48 Cal.App.5th 588, 598, Division One of this District held that "the existence of an enhancement under section 12022.53, subdivision (d) does not show that a defendant acted with malice aforethought. It therefore does not establish as a matter of law that [the petitioner] could still be convicted of

---

instruct it on attempted murder under the natural and probable consequences doctrine. As we discuss below, this argument is baseless.

murder under the new law and is ineligible for relief under section 1170.95." (*Ibid.*)

Accordingly, the true finding as to section 12022.53, subdivision (d), standing alone, was not tantamount to a finding beyond a reasonable doubt that Lebeau was the actual shooter or that he acted with express malice.[5] Nevertheless, for the reasons discussed below, we conclude that the record of conviction conclusively precludes Lebeau from obtaining relief under section 1172.6.

### 2.2.1. Attempted Murder

In his opening brief, Lebeau acknowledges that, at oral argument on his petition, the court stated that its analysis with respect to second degree murder applied equally to his attempted murder convictions. However, the only argument Lebeau makes with respect to attempted murder in his opening brief is that "there is no evidence [Lebeau] attempted to shoot Mr. Morgan and/or Mr. Simon" or that he did so with intent to kill. For the reasons discussed above, Lebeau's arguments with respect to the

---

[5] *People v. Cortes*, *supra*, 75 Cal.App.5th 198 supports the proposition for which the court cited it — that a petition for resentencing can be denied at the prima facie stage when the record reflects that the defendant was convicted under a theory of murder that is still viable (see *id*. at pp. 204–206) — but does not support the proposition that the true finding with respect to section 12022.53, subdivision (d), means that the jury found Lebeau to be the actual killer. Although the jury in *Cortes* found true allegations that a principal discharged a firearm causing great bodily injury and death with respect to the first degree murder charge and found true as to count 2 that a principal used and discharged a firearm with respect to the attempted murder charge, the court of appeal did not conclude that either finding meant that the jury had found the petitioner to be the actual shooter beyond a reasonable doubt. (*Id*. at p. 202.)

insufficiency of evidence are not cognizable in an appeal from the denial of his petition for resentencing.

On reply, Lebeau contends that "[t]he lower court never addressed anything related to attempted murder in the original appeal, which is one reason it granted the motion for reconsideration. As it was not dealt with in the underlying appeal or brought up by Appellant it must not be address by the Court." If Lebeau's argument is that the court could not address attempted murder in connection with his petition for resentencing because the direct appeal from his convictions did not discuss attempted murder, he cites no authority for this proposition. In any event, the opinion in his direct appeal *does* discuss his attempted murder convictions. If — as seems more likely — Lebeau's argument is that attempted murder was not before the trial court in connection with his petition for resentencing, this claim is belied by the court's statements, which Lebeau acknowledged in his opening brief, and by his reply brief below. Indeed, in his reply brief below, Lebeau explained the changes in the law that had occurred with respect to attempted murder between when he filed his petition for resentencing and his reply brief, and which were effective at the time the court ruled on his petition, and advanced arguments pertaining to his attempted murder convictions.

We are satisfied that Lebeau sought resentencing with respect to his attempted murder convictions and that the court understood that his petition for resentencing addressed his attempted murder convictions as well as his second degree murder conviction because it expressly addressed attempted murder in its ruling. Thus, we decline to remand for further proceedings with respect to his attempted murder convictions.

16

At trial, Lebeau's jury was instructed on attempted murder with CALJIC Nos. 8.66 and 8.67, which require a specific intent to kill, and direct aiding and abetting with CALJIC No. 3.01, which requires that the person aiding and abetting act with knowledge of the unlawful purpose of the perpetrator, with intent to commit or encourage the commission of the crime, and aids the commission of the crime. The jury was not instructed on the natural and probable consequences doctrine.

"Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*Coley, supra,* 77 Cal.App.5th at p. 548.) The Attorney General argues that section 1172.6, subdivision (a)(1), provides that a person convicted of attempted murder may be eligible for relief only where he or she could be or was convicted "under the natural and probable consequences doctrine," and the absence of this instruction means that Lebeau is ineligible as a matter of law. (*Coley,* at p. 548 [petitioner not entitled to relief where jury was instructed on direct aiding and abetting and was not instructed on the natural and probable consequences doctrine].) Lebeau does not contest this point.

Instead, in his supplemental briefing on *Curiel,* Lebeau argues that he "was convicted of shooting at an occupied vehicle" and "[t]hat charge alone should have included the jury instructions for attempted murder under the natural and probable causes when looking at the facts." His claim appears to be that attempted murder under the natural and probable consequences doctrine is a lesser included offense of shooting at an occupied vehicle and that the court therefore had a duty to instruct the jury on that doctrine. "An offense is a lesser included offense to a charged offense if the former is necessarily included

in the latter. There are two tests to determine whether this is so: (1) if all of the elements of the lesser offense are included in the elements of the greater offense, or (2) if the allegations of the pleading describe the charged offense so that it necessarily includes all the elements of the lesser offense." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 642.) We fail to see how attempted murder could be a lesser included crime of shooting at an occupied vehicle, considering that: (1) shooting at an occupied vehicle is a general intent crime (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1356) whereas attempted murder requires the specific intent to kill (*People v. Mariscal* (2020) 47 Cal.App.5th 129, 137); and (2) attempted murder does not require the discharge of a firearm.[6] Moreover, Lebeau's assertion of instructional error relies on *People v. Woods* (1992) 8 Cal.App.4th 1570 and "has nothing to do with the legislative changes to California's murder law effected by Senate Bill No. 1437 (2017–2018 Reg. Sess.) . . . and Senate Bill No. 775 [(2021–2022 Reg. Sess.)]. . . . [¶] [T]he case law on which [he] relies was decided well before the jury verdict in his trial. [Citations.] His remedy for any alleged instructional error that affected the verdict was his appeal from the judgment of conviction." (*People v. Burns* (2023) 95 Cal.App.5th 862, 867–868.)

In any event, since the purported error was the court's *failure* to instruct the jury on the natural and probable consequences doctrine, and Lebeau is only entitled to relief with respect to attempted murder under section 1172.6 if he was

---

[6] Courts have held that grossly negligent discharge of a firearm (§ 246.3) is the lesser included offense of shooting at an occupied vehicle (§ 246). (See, e.g., *People v. Overman*, *supra*, 126 Cal.App.4th at pp. 1360–1361.)

convicted under that doctrine, he essentially concedes that he cannot establish a prima facie claim of entitlement to resentencing with respect to his attempted murder convictions. We decline his invitation to speculate as to whether the jury might have relied on the natural and probable consequences doctrine had it been given that instruction, because the jury necessarily concluded that he acted with the specific intent to kill under the instructions actually provided.

We therefore conclude that Lebeau has failed to establish a prima facie case of entitlement to relief with respect to his attempted murder convictions.

### 2.2.2. Second Degree Murder

The jury was instructed with a now-impermissible second degree felony murder instruction, CALJIC No. 8.32. Specifically, the jury was told: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of Shooting At An Occupied Motor Vehicle is murder of the second degree when the perpetrator had the specific intent to commit that crime. [¶] The specific intent to commit the crime of Shooting At An Occupied Motor Vehicle and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

The Attorney General argues that it is evident as a matter of law that the jury did not rely on this instruction but instead found that Lebeau acted with express malice, as demonstrated by the attempted murder convictions. He relies again on *Coley* as support for this proposition. The *Coley* court concluded that "appellant's conviction for attempted murder demonstrate[d] that he was convicted of second degree murder with express rather

19

than implied malice" where the record of conviction showed that the "appellant was convicted of murder based on his aiding and abetting of the same shooting that gave rise to the attempted murder conviction." (*Coley*, *supra*, 77 Cal.App.5th at p. 547.) It explained that "[a]n intent to kill is the equivalent of express malice, at least when there is no question of justification or excuse, and by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second degree murder." (*Ibid.*)

Lebeau asserts that he "was not charged as the actual murderer but charged under an implied malice theory as he was the alleged second shooter." A jury may find that a defendant acted with express malice regardless of whether he or she was the direct perpetrator, as *Coley* demonstrates. The defendant in that case was prosecuted under the theory that he was the driver, not the shooter (*Coley*, *supra*, 77 Cal.App.5th at 542), but his attempted murder conviction under a theory of direct aiding and abetting necessarily meant that the jury found that he personally acted with the intent to kill. (*Id.* at p. 547.)

Lebeau contends that *Coley* is inapplicable because the record established that there was a single shooter, whereas, in this case, "the record demonstarates [*sic*] to separate shooting events, while simalotues [*sic*], they are still separate." The distinction Lebeau attempts to draw is an artificial one, for which he cites no support. It is undisputed that the three victims in this case were in the same car and that the two shooters fired at them *at the same time*, either killing or wounding them. The jury's findings demonstrate that it concluded that Lebeau was one of the shooters. The fact that there was more than one person

20

shooting does not, in our view, support the claim that the murder and attempted murders were separate incidents, such that Lebeau could conceivably harbor a distinct mens rea as to each crime. Even if the jury believed that Lebeau only harbored the intent to kill Simon and Morgan and not Wilson, "[i]ntent to kill transfers to an unintended homicide victim." (*Bland*, *supra*, 28 Cal.4th at p. 326.)[7] Thus, we agree with the Attorney General that *Coley* is instructive and that the attempted murder convictions demonstrate that Lebeau also acted with express malice with respect to the second degree murder conviction.

Lebeau correctly points out that, in *Coley*, "the jury did not receive instructions that it could convict appellant based on felony-murder or the natural and probable consequences doctrine at trial." (*Coley*, *supra*, 77 Cal.App.5th at p. 546.) He contends that the presence of a felony murder jury instruction automatically makes him eligible for resentencing. However, the portion of *Coley* on which Lebeau relies merely states that "aiders and abettors could be guilty of murder even if they did not personally harbor malice under either the felony murder rule or the doctrine of natural and probable consequences" at the time he was tried and that the jury in *Coley* was not instructed on felony murder. (*Id.* at p. 542.)

In *Curiel*, our Supreme Court implicitly rejected Lebeau's contention. Although the jury was instructed on the natural and probable consequences doctrine, the court stated that it could "look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction

---

[7] *Bland*, *supra*, 28 Cal.4th 313, arose from the same shooting as this appeal.

refutes the factual allegations in Curiel's petition." (*Curiel*, *supra*, 15 Cal.5th at p. 465.) Thus, *Curiel* supports that the presence of a jury instruction on a now-invalid theory of murder in the record of conviction does not automatically establish that the petitioner has made a prima facie case of entitlement to relief under section 1172.6.

Accordingly, we consider whether the jury's findings, taken together, conclusively rebut that Lebeau was convicted under a theory of felony murder. As we have stated, Lebeau's convictions for attempted murder demonstrate the jury found that he acted with express malice. However, *Curiel* supports the proposition that a jury's finding that the defendant acted with express malice, on its own, does not mean that he is not entitled to prima facie relief as a matter of law.[8] In *Curiel*, the Supreme Court concluded that intent to kill "is only one element" and "does not by itself establish any valid theory of liability. [Citation.] For example, 'under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another [e.g., murder] if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends." ' [Citation.] . . . A finding of intent to kill does not, standing alone,

---

[8] We acknowledge that the *Curiel* court described the scenario presented therein — "where a defendant is liable for murder under the natural and probable consequences doctrine, and acts with malice aforethought, but is *not* liable as a direct aider and abettor — as 'quite narrow' and relevant only to a 'very small set of cases.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 470.) For purposes of argument, we assume that its conclusion that a finding of intent to kill, standing alone, is insufficient to establish that a defendant was convicted under a valid theory of murder is not limited to this narrow subset of cases.

cover all of the required elements." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

The Supreme Court then considered whether additional jury findings in that case conclusively refuted the petitioner's claim that he could not be convicted under current law. (*Curiel*, *supra*, 15 Cal.5th at p. 463.) These findings established that: (1) Curiel knew that the perpetrator intended to commit the underlying crimes of disturbing the peace or carrying a concealed firearm by a gang member, intended to aid the perpetrator in committing either crime, and did aid him in committing those crimes; (2) the perpetrator committed murder during the commission of the underlying crimes; and (3) " 'under all the circumstances a reasonable person in [Curiel's] position would have known that the commission of murder was a natural and probable consequence of the commission of the crime of disturbing the peace or of the crime of carrying a concealed firearm by a gang member.' " (*Id.* at p. 466.)

Our high court observed that, "[a]lthough in many factual scenarios . . . the same act would satisfy the actus reus of aiding and abetting the underlying target crime and aiding and abetting the murder that results, we are unsure that the same act must necessarily satisfy each as a matter of law." (*Curiel*, *supra*, 15 Cal.5th at p. 467.) It declined to resolve whether the actus reus of direct aiding and abetting had been satisfied, however. Instead, the court concluded that the jury's finding that Curiel aided and abetted one of the underlying crimes did not necessarily mean that it had found that he acted with the requisite mens rea for aiding and abetting murder. (*Ibid.*) "An aider and abettor who knows and intends to aid the direct perpetrator in certain conduct, but does not subjectively appreciate that the conduct is

dangerous to human life, is not liable for the murder that results because the aider and abettor has not sufficiently concerned himself with that murder. This conclusion holds even if the aider and abettor separately intends to kill. Intent to kill itself does not establish a sufficient mens rea regarding a murder or life-endangering conduct that the aider and abettor has no intent to aid or encourage — and that the aider and abettor does not even subjectively know will occur." (*Id.* at p. 470.)

We agree with the Attorney General that *Curiel* is distinguishable. Unlike the special circumstance finding and additional findings in *Curiel*, Lebeau's convictions for attempted murder establish both that Lebeau acted with an intent to kill *and* that he was either the direct perpetrator or had knowledge of Bland's intent to kill and encouraged or instigated Bland to act in furtherance of that intent. Although the true findings on section 12022.53, subdivision (d), do not necessarily mean that the jury found Lebeau to be the direct perpetrator, the findings further support that the jury found that Lebeau encouraged or instigated the murder of Wilson because his discharge of a firearm — whether it directly resulted in Wilson's death or spurred Bland to fire — proximately caused Wilson's death and great bodily injury to Simon and Morgan.

In sum, the attempted murder convictions in this case demonstrate that the jury found that Lebeau was sufficiently " 'concerned' with the crime [of murder] itself." (*Curiel, supra,* 15 Cal.5th at p. 468.) These convictions also leave no room for ambiguity as to whether the jury found that Lebeau's acts were in furtherance of murder or of some other offense. (*See id.* at p. 467.) Thus, we reject Lebeau's contention that the jury's verdicts shed no light on the theory under which he was convicted

24

and conclude that the jury necessarily convicted Lebeau of second degree murder under a direct aiding and abetting theory, rather than a felony murder theory.[9] We decline again to consider Lebeau's arguments concerning the sufficiency of the evidence, which are not properly before us.

---

[9] Lebeau attempts to argue that aiding and abetting is not a valid theory for second degree murder. He relies on the amended language of section 189, subdivision (e), which sets forth the current requirements for first degree felony murder. While Senate Bill No. 1437 may have eliminated second degree felony murder (see *In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2), we are not persuaded that second degree murder with express malice under a direct aiding and abetting theory has been eliminated. (See *People v. Gentile* (2020) 10 Cal.5th 830, 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"], abrogated by statute on other grounds.)

## DISPOSITION

The order denying Lebeau's petition under section 1172.6 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

<br>

LAVIN, J.

WE CONCUR:


EDMON, P. J.


ADAMS, J.