Filed 3/3/25  P. v. Ledesma CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LOUIS LEDESMA,<br><br>    Defendant and Appellant. | H050930<br>(Santa Cruz County<br> Super. Ct. No. 18CR03945) |

A jury convicted Louis Ledesma of robbery, burglary, assault with a firearm, and shooting at an inhabited dwelling, and the trial court sentenced Ledesma to prison for 51 years to life consecutive to 20 years.  On appeal, Ledesma contends that his conviction for shooting at an inhabited dwelling must be reversed because the trial court failed to instruct the jury on the lesser included offense of grossly negligent discharge of a firearm, and that the court abused its sentencing discretion under Penal Code section 1385, subdivision (c)(2) (section 1385(c)(2)), by declining to dismiss the firearm enhancement that added the consecutive 20-year term.[1]  Because there was no substantial evidence from which a jury could find Ledesma guilty of the lesser offense but not the greater one, we conclude the court properly instructed the jury.  But because the court misconstrued section 1385(c)(2) and its error was not harmless, we will reverse and remand the matter for resentencing.

---

[1] Undesignated statutory references are to the Penal Code.

# I.    BACKGROUND

The Santa Cruz County District Attorney charged Ledesma with attempted murder of a police officer (§§ 664, 187, subd. (a); count 1), three counts of first degree residential robbery (§ 211; counts 2–4), first degree burglary of an inhabited dwelling (§ 459; count 5), assault with a firearm (§ 245, subd. (a)(2); count 6), and shooting at an inhabited dwelling (§ 246; count 7).  As to counts 2 through 5, the information alleged that Ledesma personally used and intentionally discharged a firearm in the commission of these offenses.  (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b) & (c).)  The operative second amended information further alleged 14 prior convictions for strike offenses (§§ 667, subds. (b)–(i)) from two cases in 1989 and 1994, and eight circumstances in aggravation (Cal. Rules of Court, rule 4.421).

The matter proceeded to jury trial in November 2022.

## A.    *Trial Evidence*

Eli Gutierrez lived and worked at a Watsonville house with a garage that had been repurposed as a cannabis dispensary.  Gutierrez's cousin Daniel Alvarez Ayala worked at the dispensary.  In June 2018, Ledesma and Dominic Quintana robbed the dispensary and its customers at gunpoint.

After Ledesma and Quintana left the garage, Gutierrez appeared on the home's balcony and began firing at them with an AR-15, killing Quintana; Ledesma took cover behind a car and returned fire.[2]  Ayala came out of the garage and also fired at Ledesma.

Expert analysis of the crime scene and ballistics evidence showed that Ledesma fired at least eight rounds from the street into the residence.  The shots shattered the glass sliding door of the master bedroom, penetrated the bedroom, and left bullet holes in the walls and ceiling.  The shots also damaged the lower beam of the balcony and the garage.

---

[2] Gutierrez was separately charged and convicted for Quintana's death.

Ledesma eventually fled the scene of the shooting.  While leaving, Ledesma encountered Kenneth M. Thomas, a neighbor who drove by to investigate the sound of gunfire.  Ledesma pointed his gun at Thomas, who drove off.

Police soon spotted Ledesma at a nearby middle school and an officer chased him.  As the officer gained on him, Ledesma turned and pointed his gun toward the officer, who knocked it out of his hand.  After a struggle, Ledesma was arrested.

**B.**     ***Section 246 Instructions and Defense Argument***

The trial court instructed the jury on the elements of shooting at an inhabited dwelling[3] and on the defense theory of self-defense/defense of another.  As to the latter, the court instructed:  "The defendant is not guilty of [shooting at an inhabited dwelling] if he used force against the other person in lawful self-defense or defense of another.  The defendant acted in lawful self-defense or defense of another if:  [¶]  1. The defendant reasonably believed that he or Dominic Quintana was in imminent danger of suffering bodily injury;  [¶]  2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;  [¶]  AND  [¶]  3. The defendant used no more force than was reasonably necessary to defend against that danger."  (CALCRIM No. 3470.)

Neither party asked that the jury be instructed on the lesser included charge of grossly negligent discharge of a firearm in violation of section 246.3.  The trial court said it would not give the instruction because "the only distinction [between the charged offense and the lesser included] is whether the dwelling is . . . within the range of the shooting."  Ledesma's counsel replied, "That's not the issue."

---

[3] On this charge, the trial court instructed the jury as follows:  "The defendant is charged in [c]ount 7 with shooting at an inhabited house.  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1. The defendant willfully and maliciously shot a firearm;  [¶]  2. The defendant shot the firearm at an inhabited house;  [¶]  AND  [¶]  3. The defendant did not act in self-defense or in defense of someone else."

In closing argument, Ledesma did not dispute that the house was inhabited, that it was within his range of fire, or that he intentionally discharged a firearm. Ledesma's trial counsel argued that Ledesma was shooting in self-defense at those who were trying to kill him: "[T]he only shots that [Ledesma] fires the whole day are the eight shots that he unleashes [when Ayala and Gutierrez] are trying to kill him. And if you believe that that's the reason why he's returning that fire, you may find him not guilty of . . . shooting at an inhabited dwelling."

During deliberations, the jury asked: "If a person is shooting at another person and mistakenly hits an inhabited house, does that qualify by law as shooting a firearm at an inhabited house? [¶] . . . Does intent matter?" The court responded: "An intent to . . . strike the building is not required, only a reckless disregard or conscious indifference to the probable consequences that one or more shots would hit the building."

## C. *Verdict and Sentencing*

The jury convicted Ledesma of counts 2 through 7, and found true, with respect to counts 2 through 5, the allegations that Ledesma personally used and intentionally discharged a firearm in the commission of the offenses.[4] In a bifurcated trial, the jury then found true each of the 14 strike allegations and four circumstances in aggravation.[5] The parties appeared to agree that another four aggravating circumstances were

---

[4] The jury was unable to reach a verdict on the attempted murder charge (count 1), and the district attorney subsequently dismissed that count.

[5] The four circumstances in aggravation the jury found were: (1) the offenses "involved great violence, great bodily harm, or high degree of cruelty, viciousness, or callousness"; (2) the defendant used a weapon in the commission of the offenses; (3) the offenses involved "planning, sophistication, or professionalism"; and (4) the defendant "engaged in violent conduct which indicates he is a serious danger to society."

appropriate for determination by the trial court, and the court then found those circumstances to be true as well.[6]

At the sentencing hearing, the trial court announced its intention to deny Ledesma's request for dismissal of strike allegations under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.[7] The court also announced a tentative aggregate sentence of 51 years to life, plus a consecutive determinate term of 20 years. The indeterminate component of the sentence comprised concurrent terms on counts 2 through 4 of 26 years to life[8] and a consecutive term of 25 years to life on count 6; the determinate term of 20 years for the discharge of a firearm under section 12022.53, subdivision (c), applied only to counts 2 through 4. The sentences for counts 5 and 7 were stayed under section 654.

---

[6] The four circumstances in aggravation the court found were: (1) the defendant's prior convictions are "numerous or of increasing seriousness"; (2) "the defendant served a prison prior term"; (3) "the defendant was on probation, mandatory supervision, post-release community supervision, or parole at the time the crime[s] w[ere] committed"; and (4) "the defendant's prior performance on probation, mandatory, supervision, post-release community supervision, or parole was unsatisfactory." Ledesma does not challenge the propriety of this judicial factfinding. (See *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 331 [acknowledging the "recent appellate cases which hold that [aggravating circumstances relating to prior convictions] are exceptions to the jury trial requirement under the Sixth Amendment"]; *People v. Wiley* (2023) 97 Cal.App.5th 676, 684–685, review granted Mar. 12, 2024, S283326 [detailing the division amongst the appellate courts on this issue].)

[7] Based on the district attorney's characterization of the conduct underlying Ledesma's prior strike offenses, the trial court found that "at least seven of those did not arise out of the same conduct" under *People v. Vargas* (2014) 59 Cal.4th 635. Ledesma does not challenge the propriety of this judicial factfinding. (Cf. *Erlinger v. United States* (2024) 602 U.S. ___, ___ [144 S.Ct. 1840, 1849–1850].)

[8] The court followed section 667, subdivision (e)(2)(A)(iii) in adopting the six-year upper term for robbery (§ 213, subd. (a)(1)(B)) plus 20 years for the enhancement (§ 12022.53, subd. (c)). (See *People v. Coker* (2004) 120 Cal.App.4th 581, 587–590.)

The court acknowledged three mitigating factors identified by the probation officer: (1) that application of an enhancement could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C) (§ 1385(c)(2)(C))); (2) that multiple enhancements were alleged in a single case (§ 1385, subd. (c)(2)(B)); and (3) one enhancement was based on a prior conviction over five years old (§ 1385, subd. (c)(2)(H)). But the court opined that these statutory factors did not "carry significant weight" here because dismissing the enhancements would endanger public safety.

Given the tentative denial of his *Romero* motion, Ledesma, then 54 years old, asked the trial court to sentence him to no more than 31 years to life. In support, he cited section 1385(c)(2), his anticipated age upon eligibility for parole even without a firearm enhancement, and what he argued were the mental health effects of 20 years in solitary confinement as a basis for relieving him of the maximum penalty for discharging a firearm in connection with the robberies.

The trial court adopted its tentative ruling and sentenced Ledesma to a total term of 51 years to life for the substantive offenses, and an additional, consecutive 20-year term for the firearm enhancement. Acknowledging Ledesma's "life expectancy, et cetera," however, the court told the parties: "I just want to give them an alternative finding . . . . [B]ecause [Ledesma's] conduct is just so incredibly violent, scary, dangerous, and there's just so many aggravating factors . . . and, really, so few mitigating factors – that even if I was to give great weight to any of the mitigating factors that are identified in the presentence report or the [section 1385](c)(2) factors [defense counsel] has asserted existed . . . the aggravating factors in this case would still outweigh all of those."

Ledesma timely appealed.

6

## II. DISCUSSION

### A. *Instruction on Section 246.3*

We review de novo Ledesma's claim that the trial court should have instructed the jury on grossly negligent discharge of a firearm. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1218.) Grossly negligent discharge of a firearm in violation of section 246.3, subdivision (a) is a lesser included offense of shooting at an inhabited dwelling. (*People v. Ramirez* (2009) 45 Cal.4th 980, 990 (*Ramirez*); *People v. Bell* (2019) 7 Cal.5th 70, 108.) "The only difference between the two crimes is that [section 246] 'requires that an inhabited dwelling . . . be within the defendant's firing range.' " (*Bell*, at p. 108; see also *People v. Overman* (2005) 126 Cal.App.4th 1344, 1362 (*Overman*) [accord].) But a trial court need not instruct sua sponte on a lesser included offense absent substantial evidence from which a jury could find the defendant guilty of the lesser offense but not the greater. (*People v. Licas* (2007) 41 Cal.4th 362, 366 (*Licas*).) So the trial court was required to instruct on section 246.3 only if there was substantial evidence from which a jury could conclude that the shots Ledesma fired were not " ' "in close proximity to" ' " the residence. (See *Bell*, at p. 109.) There was no such evidence.

Ledesma's gunshots hit the residence, penetrated the master bedroom, and caused damage to the inner walls and ceiling, dispelling any inference that the residence was outside Ledesma's firing range. Ayala recounted seeing Ledesma "shooting at the top of the balcony and at [Ayala]" from behind a car. Narrating surveillance video of the shootout, an officer described Ledesma "firing towards . . . the house or Mr. Ayala." We accordingly see no evidence " 'which, if accepted, " 'would absolve [Ledesma] from guilt of the greater offense' [citation] but not the lesser." ' " (*Licas*, *supra*, 41 Cal.4th at p. 366, italics omitted.)

Ledesma does not dispute the direction of fire but argues that substantial evidence of self-defense would negate the "malicious" intent he posits is necessary to section 246's greater offense, while section 246.3 requires only willfulness. But his argument

misconstrues the general intent common to both offenses.  As the Supreme Court has explained, "[a]lthough the mens rea requirements are somewhat differently described [in sections 246 and 246.3], both are general intent crimes."  (*Ramirez*, *supra*, 45 Cal.4th at p. 990; see also *Overman*, *supra*, 126 Cal.App.4th at p. 1357, fn. 5 ["As used in section 246, the terms 'maliciously' and 'willfully' are expressions of the statute's general intent requirement"].)  The required mental state for sections 246 and 246.3 alike is thus limited to "an intent to do the act that causes the harm."  (*Overman*, at p. 1361; *People v. Iraheta* (2014) 227 Cal.App.4th 611, 620–621.)  Section 246 " 'does not require a specific intent to achieve a particular result (e.g., strike an inhabited or occupied target, kill or injure).  [Citation.]  Instead, the statute only requires a shooting under facts or circumstances that indicate a conscious disregard for the probability that one of these results will occur.' "  (*People v. White* (2014) 230 Cal.App.4th 305, 316–317.)

Here, there is no dispute that Ledesma harbored that conscious disregard:  he intentionally fired at Gutierrez on the balcony and at Ayala outside the garage, whether he intended to hit persons or property.[9]  (See *People v. Chavira* (1970) 3 Cal.App.3d 988, 993 [holding that shooting at people congregating in front of house satisfies § 246]; *People v. Cruz* (1995) 38 Cal.App.4th 427, 432–433 [holding that shooting at individual residing within inhabited building meets § 246's intent requirement].)  No more is required.

Nor did the substantial evidence supporting Ledesma's self-defense theory entitle him to a jury instruction on the lesser offense.  As the Attorney General notes, self-defense is a complete defense to *both* sections 246 and 246.3.  (See *People v. Lee* (2005) 131 Cal.App.4th 1413, 1427 [applying self-defense to a charge under § 246.3].)

_____

[9] When the jury's questions conveyed confusion on that point, the court correctly clarified that "intent to . . . strike the building is not required, only a reckless disregard or conscious indifference to the probable consequences that one or more shots would hit the building."

Thus, having rejected Ledesma's claim of self-defense with respect to the greater charge, the jury would necessarily have done the same with respect to the lesser.

With no substantial evidence from which a reasonable jury could conclude that Ledesma is guilty of the lesser offense, but not the charged offense, the trial court properly declined to instruct the jury on grossly negligent discharge of a firearm. (*Licas, supra*, 41 Cal.4th at p. 366.)

**B.**    ***Section 1385(c)(2)***

We reach a different conclusion as to Ledesma's contention that the trial court applied the wrong legal standard in declining to dismiss the firearm enhancement. (See *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 *(Gonzalez)* [explaining that a trial court abuses its discretion " 'if [it] based its decision on . . . an incorrect legal standard' "].)

A sentencing court deciding whether to dismiss a sentencing enhancement must "afford great weight" to evidence of nine enumerated mitigating circumstances, each of which "weighs greatly in favor of dismissing the enhancement" unless "the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2); see also *People v. Walker* (2024) 16 Cal.5th 1024, 1034–1035 *(Walker)*.)

As Ledesma notes, one such mitigating circumstance applies here: "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement *shall be dismissed*." (§ 1385(c)(2)(C), italics added; but see *People v. Mendoza* (2023) 88 Cal.App.5th 287, 291 *(Mendoza)* [holding that the mandatory language of § 1385(c)(2)(C) "does not mandate dismissal of an enhancement when the court finds that dismissal would endanger public safety"].)[10] The crux of

_____

[10] The Attorney General, like the district attorney in the trial court, argues that this factor does not apply because application of the enhancement is not the *only* sentencing factor that would result in Ledesma's sentence exceeding 20 years. Neither the district attorney nor the Attorney General have provided any plausible basis to write into the statutory language the limitation they urge, to disregard section 1385, subdivision (c)'s

Ledesma's argument is that dismissing the enhancement could not endanger public safety because even without the enhancement's additional 20-year term, Ledesma would be dead or at least infirm when he would become eligible for parole in 51 years. In light of intervening case authority clarifying the scope of a sentencing court's discretion in applying both the public safety exception and section 1385(c)(2) more generally, we conclude that a remand for resentencing is necessary.

### 1. *Public Safety*

In determining whether dismissing an enhancement would endanger public safety, the "crucial part of the inquiry is how the dismissal . . . will impact the length of the defendant's sentence." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) Thus, a "currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Ibid.*) When the defendant is serving an indeterminate sentence, this public safety assessment should also "take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings . . . who will have the opportunity to assess the defendant's dangerousness at that time." (*Ibid.*)

Ledesma was 49 years old when he committed the offenses for which he was sentenced to an indeterminate term of 51 years to life consecutive to the 20-year determinate term for the firearm enhancement at issue here. Even without the enhancement, and even assuming conduct credits, he would not be eligible for a parole suitability hearing until he is over 90 years old. (See §§ 3046, subd. (b), 2933.1, subd. (a) & 667.5, subd. (c)(9).) To be clear, we do not question the trial court's pre-*Gonzalez*

unmistakable purpose of moderating sentences, or to infer that this legislative intent would evaporate beyond the 20-year threshold. A more plausible reading of section 1385(c)(2)(C) is that the Legislature considered *any* sentence above 20 years to require close scrutiny of constituent enhancements.

determination that Ledesma's current conduct represents a danger to public safety and that a long sentence is necessary for protection of the public. We hold only that, as in *Gonzalez*, the court's "singular focus" on Ledesma's current and past dangerous conduct overlooked the "crucial part of the inquiry"— "how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) What the court did not consider was the marginal impact on public safety of allowing for the Board of Parole Hearings to assess Ledesma's suitability for parole in his 90's, rather than making Ledesma ineligible for parole until beyond any reasonable life expectancy.[11] (See *Gonzalez*, at p. 228.) We follow *Gonzalez* in concluding this was error.

### 2. *Prejudice*

The Attorney General contends that any error in finding that dismissal of the firearm enhancement endangered public safety would have been harmless given the court's "alternative finding" that "there's just so many aggravating factors . . . and . . . so few mitigating factors – that even if [the court were] to give great weight to any of the mitigating factors . . . the aggravating factors in this case would still outweigh all of those." We disagree.

To begin, section 1385(c)(2)(C), unlike seven of the nine listed mitigating factors, specifies that an enhancement that could result in a sentence of over 20 years "shall be dismissed"—language the trial court here did not acknowledge in its alternative finding.

---

[11] We understand the trial court's reference to "life expectancy, et cetera" to acknowledge that Ledesma will likely not reach age 110, when he might become eligible for a parole hearing under the sentence imposed. And even dismissing the 20-year enhancement would leave Ledesma ineligible for parole for more than a decade beyond the 77.8-year actuarial estimate his counsel argued to the trial court. But we see nothing in the statutory scheme that would allow the expectation of a defendant's death before parole eligibility to trump the inquiry required by section 1385, subdivision (c) into the danger posed by dismissal of an enhancement.

11

Courts of Appeal have differed in their interpretations of this mandatory language. (Compare *Mendoza*, *supra*, 88 Cal.App.5th at p. 291 [holding that § 1385(c)(2)(C)'s mandatory language is subject to exception where dismissal would endanger public safety] with *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18 [suggesting in dictum that even "[a]bsent a finding that dismissing the enhancement would endanger public safety," a court must still find that dismissal would be " 'in furtherance of justice' "].) Even following *Lipscomb*'s greater loosening of the mandatory language, however, the trial court's misapplication of the public safety exception was not harmless.

In ascertaining prejudice, we apply the standard set forth in *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*), which requires us to remand for resentencing unless "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware' " of the proper scope of its discretion. (*Id.* at p. 1391; *Gonzalez*, *supra*, 103 Cal.App.5th at p. 231.) Because "the purpose of sentencing is public safety" (§ 1170, subd. (a)(1))[12] and the trial court's express focus at sentencing hearing was on public safety, we can only infer that the court's legal error in

---

[12] The California Rules of Court identify other objectives of sentencing, including punishment and deterrence. (Cal. Rules of Court, rule 4.410(a)(2)–(4).) But to the extent "these objectives may suggest inconsistent dispositions," courts are to consider which are "of primary importance in the particular case" and "be guided by statutory statements of policy." (*Id.*, rule 4.410(b).)

These statutory statements continue to evolve. The Legislature in 2016 amended section 1170, subdivision (a)(1)'s findings and declarations, which formerly announced: "The purpose of imprisonment for crime is punishment." As amended, the declaration now reads: "The purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice." (Stats. 2016, ch. 696, § 1, p. 4773.) And after Ledesma was sentenced, the Legislature further cabined the punishment function of sentencing, this time adding the following underscored text to section 1170, subdivision (a)(1): "When a sentence includes incarceration, the deprivation of liberty satisfies the punishment purpose of sentencing. The purpose of incarceration is rehabilitation and successful community reintegration achieved through education, treatment, and active participation in rehabilitative and restorative justice programs." (Stats. 2023, ch. 560, § 2, p. 5989.)

12

assessing the relative public safety risks of 51 years to life rather than 71 years to life necessarily informed its assessment of the punishment appropriate to the danger posed by Ledesma's current and prior offenses.

The trial court's alternative rationale for its sentence does not render harmless its interpretation of the public safety exception. Rather than clearly indicate that the decision would have been the same absent misapprehension of section 1385, subdivision (c), the court in contrasting "so many" aggravating factors versus "so few" mitigating factors as a proxy for weight did not anticipate the Supreme Court's later clarification of the "great weight" to be afforded section 1385(c)(2)'s enumerated mitigating factors.

In interpreting section 1385(c)(2), the Supreme Court emphasized that "[t]he most pivotal phrase to a trial court's evaluation of the enumerated mitigating circumstances is 'weighs greatly' " (*Walker*, *supra*, 16 Cal.5th at p. 1035). This means that those circumstances are "entitled to 'increased significance and importance in the [court's] overall balancing of factors,' " requiring " '*special emphasis*,' " and "weigh[ing] 'strongly in favor of . . . dismissal.' " (*Id.* at p. 1036.) The *Walker* majority suggested that "[i]n practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement . . . .' " (*Id.* at p. 1038; but see *ibid.* (conc. opn. of Corrigan, J.) [objecting to "[t]his formulation" as "creat[ing] confusion"].)

We recognize that the trial court did not have the benefit of the Supreme Court's decision in *Walker*, and we acknowledge the court's recital of the "great weight" language. But aside from its narrow focus on Ledesma's current danger to public safety, the court's weighing of the relative number of aggravating factors and mitigating factors is not consistent with *Walker*'s direction, particularly when many of the aggravating factors (e.g., "great violence," "use of a weapon," and "serious danger," or "prior prison term" and "numerous" prior convictions) overlapped not only each other but also statutory sentencing allegations that otherwise increased Ledesma's sentence. The

13

" 'holistic balancing with special emphasis on the enumerated mitigating factors' " that *Walker* prescribed (*Walker*, *supra*, 16 Cal.5th at p. 1036, italics omitted) is not undertaken in a vacuum but with the functional objective of ensuring public safety. A court may ultimately find "countervailing factors" to " 'neutralize even the great weight of [a] mitigating circumstance.' " (*Id.* at p. 1036.) But at no point in its balancing may a court merely tally the factors on either side of the balance without careful assessment of the statutory mitigating factors' "great weight," " '*special emphasis*,' " " 'increased significance,' " and " 'increased . . . importance' " (*ibid.*)—including assessment of the real implications of these factors for the individual defendant before the court and protection of the public. Because the court here did not undertake that careful assessment in its alternative finding, we cannot rely on it to find harmless the court's misapplication of the public safety exception.

The record here does not "clearly indicate" that the trial court would have imposed the same sentence had it been aware of section 1385(c)(2)'s constraints on its discretion, as later clarified through *Gonzalez* and *Walker*. Ledesma is thus entitled to resentencing consistent with current law. (See *Gutierrez*, *supra*, 58 Cal.4th at p. 1391.)

## III.   DISPOSITION

The judgment is reversed and the matter remanded for resentencing.

_____
LIE, J.

WE CONCUR:


_____
GROVER, Acting P. J.


_____
WILSON, J.


*People v. Ledesma*
H050930